[ PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
10/06/99

THOMAS K. KAHN
CLERK

_____

No. 98-9557
Non-Argument Calendar

_____

D. C. Docket No. 1:98-cr-63-01

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMES E. MCCLENDON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(October 6, 1999)**

Before BLACK, CARNES and HULL, Circuit Judges.

PER CURIAM:

James E. McClendon, Defendant-Appellant, pled guilty to conspiring to commit Medicaid fraud in violation of 18 U.S.C. § 371 and money laundering in violation of 18 U.S.C. § 1957 and was sentenced to seventy-eight months' incarceration. McClendon appeals this sentence. Specifically, McClendon argues on appeal that the district court erred in declining to group the fraud and money laundering counts together for the purposes of sentencing pursuant to United States Sentencing Guideline § 3D1.2(d). McClendon also asserts that the district court incorrectly based one of his two criminal history points on a misdemeanor insufficient-funds check charge. Upon review, we affirm.

## I. BACKGROUND

### A. Facts

McClendon and his co-defendant, James Fletcher, became affiliated in early 1994. At the time, McClendon, a psychiatrist, operated numerous clinics in Atlanta, Georgia for which he had several separate Medicaid provider numbers. Fletcher operated an entity known as Human Resources Inc., Concept ("HRIC") and McClendon contracted with Fletcher to serve as the medical provider for the company. HRIC was advertised to parents of Medicaid eligible children as an after-school or summer program offering assistance with homework, exposure to areas of academic or artistic enrichment, and "non-traditional counseling."

Unbeknownst to the parents, HRIC also billed Medicaid for psychiatric services allegedly provided to the children enrolled in the program.

Pursuant to Medicaid regulations, payment is only permitted for psychotherapy services provided by a physician. During the course of his association with Fletcher, however, McClendon regularly billed Medicaid for services provided to enrolled children by other members of his staff, none of whom was a physician. In addition, very few, if any, of the children actually received psychotherapy. Further, McClendon frequently billed Medicaid for psychotherapy allegedly provided when children were either absent or on a field trip, and when McClendon himself was out of the country.

During the fourteen month period covered by the indictment, McClendon submitted over 77,000 false claims to Medicaid involving more than 4,000 children. Medicaid was billed approximately $8,600,000 and actually paid out $6,600,000. Typically, payment was made through checks payable to McClendon or one of his businesses. McClendon would then draft checks payable to HRIC for some of the amount received from Medicaid. McClendon ultimately transferred approximately $3,300,000 to Fletcher and/or HRIC in this manner.

Some of the proceeds transferred to HRIC were then deposited into an HRIC cash management account with Merrill Lynch. From that account, monies were

3

transferred into a Merrill Lynch account in McClendon's name, from which McClendon then transferred the money into his separate corporate accounts or withdrew it for personal use. In addition, some of the proceeds were transferred from the HRIC account to an investment venture controlled by McClendon and Fletcher called Partners, Inc. It appears, however, that Partners, Inc. had no legitimate business purpose.

**B.      Procedural History**

McClendon and Fletcher were charged in a forty-four count indictment in the Northern District of Georgia on February 25, 1998. The indictment charged, among other things, conspiracy to commit Medicaid fraud in violation of 18 U.S.C. § 341 and money laundering in violation of 18 U.S.C. § 1957. On August 11, 1998, McClendon entered a negotiated plea of guilty to conspiracy to commit Medicaid fraud and three counts of money laundering.

An initial sentencing hearing was held on November 17, 1998. At this hearing, McClendon challenged the Probation Officer's determination that the fraud and money laundering counts should be grouped separately in calculating his offense level. In addition, McClendon argued that three 1985 misdemeanor charges for bad checks should not be included in the calculation of his criminal history because the offenses occurred more than ten years prior to the conduct in

4

the instant case. The district court adjourned the hearing in order to further consider the parties' arguments regarding the grouping of charges.

Sentencing resumed on November 2, 1998, at which time the district court declined to group the fraud and money laundering counts. The district court specifically found that the nature and measure of the harm resulting from the two offenses differed in that there were separate victims of the two offenses and the offense level for each count is determined in a different manner under the Guidelines. In addition, the district court found that McClendon's scheme to defraud Medicaid was not dependant upon the money laundering. Also at this second hearing, McClendon conceded that the law did not support his position regarding his prior bad check convictions. As a result, McClendon was sentenced to seventy-eight months' incarceration as to the money laundering counts, and sixty months as to the fraud count, to run concurrently.

## II.   DISCUSSION

### A.   Grouping of Offenses

McClendon's first argument on appeal is that the district court erred in failing to group his fraud and money laundering counts together for the purposes of sentencing. This Court reviews a district court's application of the Guidelines to the facts de novo. See United States v. Bernardine, 73 F.3d 1078, 1079 (11th Cir.

1996).  The district court's factual findings, however, are reviewed for clear error. See United States v. Lewis, 115 F.3d 1531, 1536 (11th Cir.  1997).

Section 3D1.1 of the Sentencing Guidelines provides that the first step in the process of  determining the sentence of a defendant convicted of more than one count is for the court to group the counts of conviction into groups of "Closely Related Counts" pursuant to section 3D1.2.  U.S.S.G. § 3D1.1.[1]  Section 3D1.2, in turn, provides that all counts "involving substantially the same harm" shall be grouped together, and describes four situations in which counts are considered to involve substantially the same harm.[2]  McClendon argues on appeal only that the

---

[1]  This Guidelines section provides, in relevant part, that:
   (a) When a defendant has been convicted of more than one count, the court shall:
      (1) Group the counts resulting in conviction into distinct    Groups of Closely  Related Counts ("Groups") by applying the rules specified in § 3D1.2.
      . . .
U.S.S.G. § 3D1.1(a) (Nov. 1997).

[2]  Section 3D1.2 states:
§ 3D1.2.    Groups of Closely Related Counts
      All counts involving substantially the same harm shall be grouped together into a single Group.  Counts involve substantially the same harm within the meaning of this rule:
      (a)    When counts involve the same victim and the same act or transaction.
      (b)    When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.
      (c)    When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.

6

counts to which he pled guilty should be grouped pursuant to subsection (d) of

U.S.S.G. § 3D1.2, and, as a result, we will address only that subsection.[3]

Subsection (d) of section 3D1.2(d) states that counts involve substantially

the same harm:

> [w]hen the offense level is determined largely on the basis of the total
> amount of harm or loss, the quantity of a substance involved, or some
> other measure of aggregate harm, or if the offense behavior is ongoing
> or continuous in nature and the offense guideline is written to cover
> such behavior.

In addition, this subsection lists guideline sections representing offenses that "are

to be grouped" and guideline sections representing offenses that are "specifically

---

(d)     When the offense level is determined largely on the basis of the total
amount of harm or loss, the quantity of a substance involved, or some
other measure of aggregate harm, or if the offense behavior is
ongoing or continuous in nature and the offense guideline is written
to cover such behavior. . . .

[3] In arguing that grouping is not appropriate in this case, the Government relies in part upon United States v. Jenkins, 58 F.3d 611 (11th Cir. 1995) (declining to group transportation of stolen goods and money laundering charges). Specifically, the Government asserts that, like in Jenkins, the victims of the two offenses here differ, different conduct is criminalized by the relevant offenses, the offense level for fraud does not determine the offense level for money laundering, and the guidelines applicable to the two counts measure different harms. The Government is correct that these factors were listed by the Jenkins court as the basis for it's determination that grouping was not appropriate. A closer look at these factors, however, reveals that they largely mirror the four definitions of offenses involving "substantially the same harm" given in U.S.S.G. § 3D1.2 (a), (b), (c), and (d). Because, as stated above, McClendon asserts only that grouping is appropriate pursuant to subsection (d), several of the Jenkins factors are not helpful to our analysis in this case.

7

excluded" from grouping, and states that a case-by-case determination should be made as to the grouping of other offenses pursuant to subsection (d). U.S.S.G. § 3D1.2(d). Both the relevant fraud guideline, § 2F1.1, and money laundering guideline, § 2S1.2, are listed in the first category.

McClendon concedes, however, that the mere listing of both of these guidelines as offenses that "are to be grouped" does not automatically necessitate grouping. See United States v. Harper, 972 F.2d 321, 322 (11th Cir. 1995).[4] In Harper, the defendant argued that his convictions for money laundering and drug trafficking should be grouped for the purposes of sentencing. Despite the fact that the relevant guidelines for the two offenses were both listed as offenses that "are to

---

[4] Indeed, our sister circuits have split on the issue of whether the grouping of fraud and money laundering counts is appropriate pursuant to section 3D1.2(d). Compare United States v. Landerman, 167 F.3d 895 (5th Cir. 1999) (finding that grouping would be appropriate because the money laundered was reinvested into and perpetuated the fraudulent scheme); United States v. Emerson, 128 F.3d 557 (7th Cir. 1997) (finding grouping appropriate when the defendant was convicted of laundering money "with the intent to promote the carrying on of a specified unlawful activity" pursuant to 18 U.S.C. § 1956(a)(1)(A)(i)); United States v. Wilson. 98 F.3d 281 (7th Cir. 1996) (finding grouping appropriate in a Ponzi scheme); United States v. Leonard, 61 F.3d 1181 (5th Cir. 1995) (finding grouping appropriate in a telemarketing fraud scam); with United States v. Napoli, 179 F.3d 1 (2d Cir. 1999) (declining to group fraud and money laundering counts because the two guidelines measure different types of harm, do so differently, and grouping could lead to unintended consequences in many cases); United States v. Kneeland, 148 F.3d 6 (1st Cir. 1998) (finding that grouping would not be appropriate because the money guideline range was not "largely determined" by the aggregate amount of harm or loss); United States v. O'Kane, 155 F.3d 969 (8th Cir. 1998) (same); United States v. Taylor, 984 U.S. 298 (9th Cir. 1993) (declining to group because the two guidelines measure harm differently); United States v. Johnson, 971 F.2d 562 (10th Cir. 1992) (declining to group fraud and money laundering counts resulting from a Ponzi scheme because the guidelines for the two offenses measure different harms).

8

be grouped," this Court disagreed. The Harper court explained that automatic grouping of offenses listed in the first category can detract from the purpose of section 3D1.2—"to combine offenses involving closely related counts." Id. (citing U.S.S.G. § 3D1.2, comment (n.6)). Because money laundering and drug trafficking were not found to be of the same general type, and the facts in Harper did not show the offenses to be closely related, this Court concluded that the offenses should not be grouped. Id.

The comment accompanying section 3D1.2 cited by the Harper court states that "[c]ounts involving offenses to which different offense guidelines apply are grouped together under subsection (d) if the offenses are of the same general type and otherwise meet the criteria for grouping under this subsection." U.S.S.G. § 3D1.2, comment (n. 6). This Court has, in at least one circumstance, allowed the grouping of fraud and money laundering counts. See United States v. Mullens, 65 F.3d 1560 (11th Cir. 1995). The law of this circuit thus tells us that fraud and money laundering "otherwise meet the criteria for grouping" and the remaining question is whether, under the particular facts in this case, are the offenses closely related.

For example, Mullens involved a Ponzi scheme in which money contributed by new investors was "laundered" when paid out to old investors as false profits.

9

The laundered funds were thereby used as a means to lure new victims into the scheme and to prevent old investors from discovering the fraud. This Court thus concluded that both the fraud and the money laundering were "integral cogs in continuing the scheme" and, as a result, grouping was appropriate. Id. at 1564; see also United States v. Adams, 74 F.3d 1093, 1102 n.12 (11th Cir. 1996) (noting without discussion that "[f]raud and money laundering convictions . . . can be grouped under U.S.S.G. § 3D1.2(d)).

McClendon asserts that the laundering of funds here was a similarly integral part of the fraud scheme and thus so closely related as to warrant grouping. Unlike the Ponzi scheme in Mullens, and Wilson, 98 F.3d 281 (7th Cir. 1996), on which McClendon also relies, however, the money laundered in this case was not used as a means to lure new victims into the scheme. Instead, it appears that much of the $3,300,000 at issue was either funneled to Partners, Inc., cycled back to McClendon's other businesses, or withdrawn for personal use. Also, although the transfer of funds between accounts here did make it more difficult for investigators to trace the proceeds of the fraud, it was not a key to preventing the discovery of the scheme. Rather, it appears that the main connection between the laundered funds and the fraud scheme in this case is that the money represented the proceeds of the fraud. As this Court stated in Harper, to find that this connection alone is

10

sufficient to justify grouping would "mean that every act of money laundering would be closely related to the underlying crime which produced the money to be laundered." Harper, 972 F.2d at 322-323 (quoting United States v. Porter, 909 F.2d 789, 793 (4th Cir. 1990)). Such a result was not contemplated by the Guidelines. Thus, this Court finds that the district court did not err in declining to group the fraud and money laundering counts given the particular facts in the instant case.

**B.    Criminal History Calculation**

McClendon also asserts that the district court erred in assigning a criminal history point for his prior misdemeanor convictions of three counts of bad checks. Guideline section 4A1.2(c)(1) provides, in relevant part, that misdemeanor convictions for "Insufficient funds check" are to be counted in calculating the criminal history only if (A) the sentence was a term of probation of at least one year or a term of imprisonment of at least thirty days; or (B) the prior offense was similar to an instant offense. McClendon asserts that, pursuant to this provision, his bad check convictions should not have been included. McClendon, however, received concurrent sentences of twelve months' probation for his convictions, and therefore the Government contends that this argument is frivolous.

Because McClendon failed to raise this argument below when given an opportunity to object to his sentence, we will review the question only if failure to do so would result in manifest injustice. See United States v. Jones, 899 F.2d 1097, 1102 (11th Cir. 1990), overruled on other grounds, United States v. Morrill, 984 F.2d 1136, 1137 (11th Cir. 1993) (en banc); United States v. Williams, 144 F.3d 1397 (11th Cir. 1998). This Court equates manifest injustice with review for plain error. United States v. Newsome, 998 F.2d 1571, 1579 (11th Cir. 1993). Having considered the argument raised by McClendon, we find no plain error.

## III. CONCLUSION

We find that the district court did not err in declining to group the fraud and money laundering counts together for the purposes of sentencing. In addition, the district court properly assigned a criminal history point for McClendon's prior misdemeanor bad check convictions.

**AFFIRMED.**