[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-12516
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 26, 2010
JOHN LEY
ACTING CLERK

D. C. Docket No. 07-00127-CR-3-LAC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

VICTOR EDGAR HARRISON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(January 26, 2010)

Before BLACK, HULL and PRYOR, Circuit Judges.

PER CURIAM:

Victor Edgar Harrison appeals his 210-month sentence imposed upon

resentencing for possession of a firearm by a convicted felon, in violation of 18

U.S.C. § 922(g)(1) (Count One), and possession of a unregistered, short-barrel shotgun, in violation of 26 U.S.C. § 5861(d) (Count Two). After review, we affirm.

## I. BACKGROUND

This is Harrison's second appeal of his sentence. To place the present appeal in context, we outline the offense conduct, the original sentencing, the first appeal and Harrison's resentencing.

### A. Offense Conduct

Harrison's firearm offenses involved two separate incidents. On July 4, 2007, a police officer saw a parked truck with smoke and burning fireworks around it. When the truck drove away, the officer pursued and eventually stopped the truck. The officer discovered that Harrison, the driver, had a suspended license and was a habitual traffic violator. When a second officer found a short-barrel shotgun in the bed of the truck, Harrison fled on foot and was not recaptured.

On July 22, 2007, a police officer observed a red sports car run a stop sign and attempted a traffic stop. When the red sports car did not stop, the officer pursued with lights and sirens activated. The red sports car exceeded 80 miles an hour and ran two stop signs to elude police until the chase was called off.

Later, officers found the red sports car parked at a residence. Police went to

2

the home of the registered owner, Crystal Hall. Hall is the mother of one of Harrison's children, and Harrison resided across the street from Hall. After Hall consented to a search of her home, officers found Harrison hiding in a closet. During a subsequent interview, Hall told officers that she had seen Harrison in possession of at least four different firearms, including the above short-barrel shotgun.

**B.    Guilty Plea and Original Sentencing**

Harrison pled guilty to both firearm counts in the indictment. The Presentence Investigation Report ("PSI") calculated a base offense level of 22, pursuant to U.S.S.G. § 2K2.1(a)(3), based on Harrison's possession of a short-barrel shotgun and one prior felony conviction for either a crime of violence or a controlled substance offense. The PSI recommended a 2 level increase, pursuant to U.S.S.G. § 2K2.1(b)(1)(A), based on Harrison's possession of three to seven firearms, and a 3 level reduction, pursuant to U.S.S.G. § 3E1.1, for Harrison's acceptance of responsibility, resulting in a total offense level of 21.

The PSI calculated 17 criminal history points based on eight of Harrison's prior convictions and 2 additional points for committing the instant offenses within two years of his release from custody, which resulted in a criminal history category of VI. Harrison's total offense level of 21 and criminal history category of VI

yielded an advisory guidelines range of 77 to 96 months' imprisonment. The PSI advised that an upward departure under U.S.S.G. § 4A1.3(a)(1) for an under-represented criminal history might be warranted because: (1) Harrison had a lengthy criminal history beginning at age 9, (2) Harrison was only 25 years old at the time of sentencing, (3) a number of Harrison's convictions and arrests were not counted toward his 19 criminal history points, and (4) Harrison's 19 points put him well above the required 13 for a criminal history category VI.[1]

Harrison did not object to the PSI's recommended guidelines calculations, but the government did. The government argued that Harrison qualified as an armed career criminal under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e) and the corresponding armed career criminal guideline, U.S.S.G. § 4B1.4, based on three of Harrison's prior felony convictions.

---

[1]Section 4A1.3(a)(1) states:
(a) UPWARD DEPARTURES.—
    (1)    STANDARD FOR UPWARD DEPARTURE.—If reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, an upward departure may be warranted.
U.S.S.G. § 4A1.3(a)(1) (2007). Section 4A1.3(a)(4)(B) provides:
    (B)    UPWARD DEPARTURES FROM CATEGORY VI.—In a case in which the court determines that the extent and nature of the defendant's criminal history, taken together, are sufficient to warrant an upward departure from Criminal History Category VI, the court should structure the departure by moving incrementally down the sentencing table to the next higher offense level in Criminal History Category VI until it finds a guideline range appropriate to the case.
U.S.S.G. § 4A1.3(a)(4)(B).

4

The district court agreed with the government and sentenced Harrison as an armed career criminal with an offense level of 30, pursuant to § 4B1.4(b)(3)(B), and a criminal history category of VI. Given the ACCA's mandatory-minimum fifteen-year sentence, Harrison's resulting advisory guidelines range was 180 to 210 months. The district court imposed a 210-month sentence on Count One and a concurrent 120-month sentence on Count Two.

The district court filed a written Statement of Reasons, noting that the sentences were within the advisory guidelines range. Accordingly, the court left unfilled Section V, titled "departures authorized by the advisory sentencing guidelines," and Section VI, titled "court determination for sentence outside the advisory guideline system." The district court explained that, after considering Harrison's "lengthy criminal convictions," a total sentence at the high end of the range was warranted to "protect the public from further crimes of the defendant."

## C.     First Appeal and Remand

Harrison appealed, arguing that one of his prior convictions used for his armed-career-criminal status – a Florida conviction for fleeing or attempting to elude police under Florida Statute § 316.1935(2) – did not qualify as a "violent felony" under the ACCA and § 4B1.4. This Court agreed, vacated Harrison's sentences and remanded "for resentencing without the ACCA's increased

5

penalties." United States v. Harrison, 558 F.3d 1280, 1301 (11th Cir. 2009) (Harrison I) (concluding that a Fla. Stat. § 316.1935(2) conviction is not a violent felony under the ACCA because it does not involve fleeing or eluding at "high speed" or with "wanton disregard for the safety of persons or property," in contrast to Fla. Stat. 316.1935(3), which does).

## D.  Resentencing

On remand, the probation officer prepared (1) a supplemental addendum stating that the original PSI was correct and the district court could rely upon it, and (2) an alternate sentencing recommendation, which stated that, although the advisory guidelines range was 77 to 96 months' imprisonment, the probation officer recommended a 120-month sentence on Count One and a consecutive 90-month sentence on Count Two, for a total 210-month sentence.[2]

Likewise, the government filed a sentencing memorandum that acknowledged the advisory guidelines range of 77 to 96 months, but requested a total 210-month sentence.  The government submitted that these circumstances supported a 210-month sentence: (1) Harrison, who was 25 at the time of conviction, had 19 criminal history points, 6 more than needed for a criminal history category of VI; (2) Harrison committed all of the crimes accounting for his

---

[2]The statutory maximum sentence on Count One was 120 months under 18 U.S.C. § 924(a)(2) and on Count Two was 120 months under 26 U.S.C. § 5871.

6

19 criminal history points in less than five years, between 2002 and 2006, with the instant offenses occurring just two months after his last release from prison; and (3) numerous other convictions, including six felonies and four misdemeanors, before 2002 were not counted toward the 19 criminal history points. The government argued that, under 18 U.S.C. § 3553(a), these circumstances warranted a 210-month sentence to protect the public from further crimes by Harrison.

During the sentencing hearing, no party objected to the PSI's calculation of the advisory guidelines range of 77 to 96 months' imprisonment. However, Harrison vigorously opposed a 210-month sentence, either as an upward departure pursuant to U.S.S.G. § 4A1.3 for an under-represented criminal history or as a Booker-type variance from the advisory guidelines range. Harrison addressed each of his uncounted prior convictions and argued that they either occurred when he was a juvenile, did not involve possession of weapons, or involved only a small amount of drugs. And Harrison contended that the court should not consider his arrests that did not result in convictions.

The district court imposed a 210-month sentence, consisting of a 120-month sentence on Count One and a consecutive 90-month sentence on Count Two. The district court in essence explained that the 210-month sentence was not due to a guidelines departure based on under-represented criminal history, but was an

"upward variance" based on the § 3553(a) factors, such as the nature and circumstances of Harrison's offenses, the history and characteristics of Harrison and in order to protect the public from further crimes, to reflect the seriousness of the offenses, to promote respect for the law and to provide just punishment, stating:

> The sentence imposed in Count 1 is the statutory maximum allowed by law. And I recognize there are grounds for departure from the advisory guideline range based upon the criminal history category which substantially under-represents the seriousness, extent and nature of your criminal history and the likelihood that you will commit further crimes.
> And while this reason alone, perhaps, is not substantial enough to support the departure necessary to afford adequate punishment or deterrence in this case, I have also considered the factors set out in [18 U.S.C. § 3553(a)], as well as the advisory guidelines.
>
> . . . .
>
> . . . I determine that due to the nature and circumstances of the offense, the history and characteristics of [Harrison], that an upward variance is warranted in this case in order to protect the public from further crimes by [Harrison], to reflect the seriousness of the offense, to promote respect for the law, and provide just punishment for the offense.
> As I did in the previous sentence, I do determine that the sentence is reasonable, and I find that the sentence is sufficient, and I hope that a greater sentence should not be necessary. I also find that this sentence meets the general goals of punishment and hopefully will act as a deterrent to anyone else who might consider similar criminal conduct.

In addressing the § 3553(a) factors,[3] the district court expressly assessed the

---

[3]The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to

8

seriousness of Harrison's current offenses and his criminal history and concluded that Harrison had "a consistent pattern of aggressive, noncompliant behavior demonstrating [his] lack of respect for the law." In this regard, the district court pointed out that Harrison's current offenses involved him fleeing from police at high speeds in excess of 80 miles per hour in residential areas and illegally possessing an unregistered 16-gauge, short-barrel shotgun, that he had numerous prior convictions for fleeing from and eluding police, and that his prior periods of supervision were unsuccessful. The district court also observed that thirteen of Harrison's prior adult convictions resulted in jail terms, which indicated to the court that Harrison was not motivated to change his lifestyle in any way. The district court found that Harrison "pose[d] a physical danger to the community at large based on the facts of this case as well as [his] lifetime continuing pattern of criminal activity."[4]

As noted above, the district court concluded "due to the nature and

---

promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims. 18 U.S.C. § 3553(a).

[4]The district court recognized that Harrison (1) had a learning disability, (2) attended special education classes while in school, and (3) did not possess a high school diploma or GED, but pointed out that (4) Harrison had not pursued a GED while incarcerated.

9

circumstances of the offense, the history and characteristics of [Harrison], that an upward variance is warranted in this case in order to protect the public from further crimes by [Harrison], to reflect the seriousness of the offense, to promote respect for the law, and provide just punishment for the offense," but that a 210-month sentence was sufficient, met the goal of punishment and deterrence, and was not greater than necessary.

Afterward, the district court filed an Amended Statement of Reasons. The district court checked the box under Section IV indicating that the sentence was outside the advisory guidelines range, left blank Section V, titled "departures authorized by the advisory sentencing guidelines," and filled out Section VI that was titled "court determination of sentence outside the advisory guideline system," reiterating its explanation of the sentence. Harrison filed this appeal challenging his 210-month sentence.

## II. DISCUSSION

### A. Mandate Rule

On appeal, Harrison argues for the first time that the district court violated our mandate in Harrison I to resentence him without the ACCA's penalties.[5] We

---

[5]Ordinarily we review de novo whether the district court violated the mandate rule. United States v. Amedeo, 487 F.3d 823, 829 (11th Cir. 2007). Because Harrison did not raise this objection to his sentence in the district court, we review the issue for plain error. United States v. McClendon, 195 F.3d 598, 602-03 (11th Cir. 1999). Plain error exists if there is (1) error, (2) that is "clear or

10

disagree.

Upon remand, the district court properly followed our appellate mandate. The fact that the district court ultimately imposed the same total 210-month sentence does not mean the district court re-applied the ACCA or § 4B1.4, its corresponding guideline. Rather the district court arrived at the 210-month total sentence by calculating the advisory guidelines range without reference to the ACCA or § 4B1.4. Then the district court imposed an "upward variance" from the advisory guidelines range based on several of the § 3553(a) factors, including the seriousness of Harrison's offenses, Harrison's characteristics and extensive, continuing criminal history, the fact that his past thirteen jail sentences as an adult appeared not to have deterred Harrison's life of crime, and the need to protect the public from Harrison as a dangerous recidivist.

Harrison's reliance on Amedeo is misplaced. In Amedeo, this Court vacated several upward departures under the guidelines because the conduct used to support them was not relevant conduct. United States v. Amedeo, 370 F.3d 1305, 1321-25 (11th Cir. 2004) (Amedeo I); see also Amedeo, 487 F.3d at 827 (Amedeo

---

obvious, rather than subject to reasonable dispute," (3) that affects the defendant's substantial rights in that it would affect the outcome of the proceedings, and (4) if the first three prongs are satisfied, we may exercise our discretion to remedy the error only if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." Puckett v. United States, ___ U.S. ___, ___, 129 S. Ct. 1423, 1429 (2009) (brackets omitted). Nonetheless, as to the mandate rule, as explained later, there is no error, plain or otherwise.

II). We remanded to "recalculate the sentence in accord with [our] opinion."

Amedeo I, 370 F.3d at 1325. On remand, the district court relied on the same facts

it had used to support the reversed departures to vary the sentence upward using

the § 3553(a) factors. Amedeo II, 487 F.3d at 829-30. In the second appeal, we

affirmed, explaining that the district court did not violate our mandate by imposing

an upward variance based on the § 3553(a) factors, as opposed to a guidelines

departure. Id. at 830.

Here, the district court did not on remand impose a guidelines-based upward

departure at all or impose an upward variance on grounds this Court had concluded

were impermissible.[6] Instead, the district court imposed an upward variance based

on the § 3553(a) factors, including the seriousness of Harrison's offenses, his

characteristic of being unwilling to change his lifestyle and the overall pattern of

Harrison's continuing criminal activity despite repeated jail sentences, which

---

[6]Harrison's argument that the district court imposed a § 4A1.3 under-represented criminal history departure is not supported by the record. Instead, the district court imposed an upward variance after considering the § 3553(a) factors. See United States v. Irizarry, 458 F.3d 1208, 1211-12 (11th Cir. 2006), aff'd, Irizarry v. United States, ___ U.S. ___, 128 S. Ct. 2198 (2008) (explaining that district court's sentence above the guidelines range was the result of an upward variance and not an upward departure where the district court calculated the advisory guidelines range, considered the § 3553(a) factors and concluded that a sentence within the guidelines range did not adequately address the defendant's future dangerousness); United States v. Eldick, 443 F.3d 783, 788 n.2 (11th Cir. 2006) (explaining that the imposition of an above-guidelines sentence was not an upward departure because the district court did not cite a specific departure guideline and instead stated that the guidelines do not adequately take into account the § 3553(a) factors). Because the district court imposed an upward variance, not a § 4A1.3 departure, the district court did not improperly depart under § 4A1.3.

12

suggested that Harrison was a dangerous recidivist from whom the public needed to be protected. Our holding in Harrison I merely precluded the district court from re-applying the armed career criminal enhancements. It did not prevent the district court from considering Harrison's dangerousness reflected in the high-speed chase surrounding his current firearm offenses or his past criminal convictions, including his 2007 Florida conviction for fleeing or attempting to elude police, in deciding whether to impose an upward variance based on the § 3553(a) factors. Thus, the district court did not commit error, much less plain error, in basing its upward variance in part on these facts.

**B.     18 U.S.C. § 3742(g)(2)**

For the first time on appeal, Harrison argues that 18 U.S.C. § 3742(g)(2) prohibited the district court from imposing on remand a sentence outside the newly calculated guidelines range. Section 3742(g)(2) provides that, after remand, a district court shall resentence a defendant in accordance with § 3553 and the appellate court's instructions, but "shall not impose a sentence outside the applicable guidelines range except" on a ground that was: (1) "specifically and affirmatively included in the written statement of reasons required by section 3553(c) in connection with the previous sentencing," and (b) "held by the court of appeals" to be a "permissible ground of departure" on remand. 18 U.S.C.

13

§ 3742(g)(2)(A)-(B).[7] The purpose of § 3742(g)(2) is to prevent district courts from imposing the same illegal departure on a different theory on remand.  See H.R. Conf. Rep. No. 108-66 at 59 (2003) reprinted in 2003 U.S.C.A.A.N. 683, 694.

This provision was enacted in 2003, two years before United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005).  See Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 ("PROTECT Act"), Pub. L. No. 108-21, Title IV, § 401, 117 Stat. 650, 671.  Thus, this provision was enacted at a time when the guidelines range was mandatory and a district court could go outside that mandatory range only when specific guidelines requirements were met to warrant a guidelines-based "departure."  However, Booker made the guidelines range advisory and authorized "variances" outside the range based on the § 3553(a) factors.  See Booker, 543 U.S. at 258-60, 125 S. Ct. at 764-65.

---

[7]Section 3742(g)(2)(A) and (B) provides in full:
(g) **Sentencing upon remand**.--A district court to which a case is remanded pursuant to subsection (f)(1) or (f)(2) shall resentence a defendant in accordance with section 3553 and with such instructions as may have been given by the court of appeals, except that–

> . . . .
(2) The court shall not impose a sentence outside the applicable guidelines range except upon a ground that–
> (A) was specifically and affirmatively included in the written statement of reasons required by section 3553(c) in connection with the previous sentencing of the defendant prior to the appeal; and
> (B) was held by the court of appeals, in remanding the case, to be a permissible ground of departure.
18 U.S.C. § 3742(g)(2)(A)-(B).

Neither this Court nor the Supreme Court has addressed whether § 3742(g)(2) even applies to post-Booker variances in addition to guidelines departures. Further, in remanding cases for resentencing after Booker, both this Court and the Supreme Court have instructed district courts, without reference to § 3742(g)(2), to treat the sentencing guidelines range as advisory. See, e.g., Kimbrough v. United States, 552 U.S. 85, 90-91, 128 S. Ct. 558, 564 (2007) (applying Booker and reversing Fourth Circuit's remand instructing the district court to treat as mandatory the guidelines' crack cocaine 100:1 sentencing ratio); United States v. Shelton, 400 F.3d 1325, 1330, 1334 (11th Cir. 2005) (remanding for resentencing under post-Booker advisory guidelines). Therefore, at the very minimum, any alleged error under § 3742(g)(2) could not be plain. See United States v. Castro, 455 F.3d 1249, 1253 (11th Cir. 2006) (explaining that an error cannot be plain unless it is clear under current law). Given that the district court made an upward variance based on § 3553(a) in an advisory system, and not a guidelines-based departure, Harrison has not shown reversible error under § 3742(g)(2).

## C.     Reasonableness

Harrison argues that the district court's upward variance is procedurally and substantively unreasonable. We review the reasonableness of a sentence for abuse

15

of discretion using a two-step process. United States v. Pugh, 515 F.3d 1179, 1190 (11th Cir. 2008). We look first at whether the district court committed any significant procedural error and then at whether the sentence is substantively reasonable under the totality of the circumstances. Id. The party challenging the sentence bears the burden to show it is unreasonable in light of the record and the § 3553(a) factors. United States v. Thomas, 446 F.3d 1348, 1351 (11th Cir. 2006).

"If, after correctly calculating the guidelines range, a district court decides that a sentence outside that range is appropriate, it must 'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" United States v. Williams, 526 F.3d 1312, 1322 (11th Cir. 2008) (quoting Gall v. United States, 552 U.S. 38, 50, 128 S. Ct. 586, 597 (2007)). Likewise, although "[s]entences outside the guidelines are not presumed to be unreasonable, . . . we may take the extent of any variance into our calculus." United States v. Shaw, 560 F.3d 1230, 1237 (11th Cir.), cert. denied, 129 S. Ct. 2847 (2009). However, we "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." Gall, 552 U.S. at 51, 128 S. Ct. at 597.

Here, the 210-month sentence represented a 114-month variance from the high end of the advisory guidelines range of 77 to 96 months' imprisonment.

16

Harrison claims that the upward variance was procedurally unreasonable because the district court failed to adequately explain it. This argument is belied by the record. The district court supported the upward variance by discussing in detail several of the § 3553(a) factors, including: (1) the seriousness of Harrison's offenses, which included leading police on a high-speed chase in excess of 80 miles per hour through residential areas; (2) Harrison's extensive criminal history, which included a "pattern of aggressive, noncompliant behavior" that the district court concluded demonstrated a "lack of respect for the law"; (3) the fact that Harrison's thirteen past jail sentences had not had a deterrent effect; and (4) the danger Harrison posed to the public. The district court's explanation was adequate.

Harrison contends that the upward variance is substantively unreasonable because the district court unjustifiably relied solely on his criminal history and failed to consider mitigating factors, such as his strong family support. Again, the record does not support Harrison's argument.

Harrison's long criminal history was only one part of the district court's decision to impose the upward variance. The district court also relied on the dangerous nature of Harrison's high-speed fleeing on July 22, 2007, connected with the current two firearm offenses, which was part of a larger pattern of aggressive noncompliance with law enforcement, and the fact that Harrison's past

17

thirteen jail sentences had not deterred him in his life of crime. Based on these facts, the district court concluded that Harrison posed a serious risk of danger and that the variance was needed to protect the public, promote respect for the law, and deter Harrison from committing future crimes. See Shaw, 560 F.3d at 1237 (the district court has the discretion to attach greater weight to some § 3553(a) factors over others). Under the totality of the circumstances, the district court was within its discretion to conclude that the mitigating factors Harrison points to were outweighed by the seriousness of the offenses and the need to protect the public, afford deterrence and promote respect for the law.

Furthermore, the district court heard Harrison's mitigation arguments and acknowledged Harrison's learning disability and limited education. Although the district court did not mention Harrison's supportive family, it was not required to address and analyze each mitigating factor on the record. See Amedeo, 487 F.3d at 833 (stating the district court's failure to discuss mitigating evidence does not mean the court ignored it or failed to consider it). We also recognize that the degree of the variance is relevant to the substantive reasonableness of the sentence and in general "a major departure should be supported by a more significant justification than a minor one." Gall, 552 U.S. at 50, 128 S. Ct. at 597. Here, a 210-month sentence is a major departure, but it is supported by a significant

18

justification.  See Shaw, 560 F.3d at 1237 (affirming upward variance from 30 to 37 months' imprisonment to statutory maximum of 120 months' imprisonment as substantively reasonable where district court highlighted defendant's fifteen-year criminal career that involved resisting arrest and carrying firearms and stressing the district court methodically reviewed the § 3553(a) factors and among other things found shorter sentences in the past were ineffective to protect the public).

Finally, that some of these facts were also considered in calculating Harrison's advisory guidelines range does not make the sentence unreasonable. The district court must calculate the advisory guidelines range and then consider the § 3553(a) factors.  See Gall, 552 U.S. at 38, 49-50, 128 S. Ct. at 586, 596-97. Nothing in § 3553(a) or our binding precedent suggests that the district court should ignore those § 3553(a) factors that have some overlap with the Sentencing Guidelines.  See Amedeo, 487 F.3d at 833 (rejecting argument that because conduct was considered in imposing guidelines enhancement, it could not be considered under the § 3553(a) factors in imposing an upward variance).  In sum, we cannot say Harrison has carried his burden to establish that the district court's 210-month total sentence was an abuse of discretion.

**AFFIRMED.**

19