[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-12773

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 4, 2012
JOHN LEY
CLERK

D.C. Docket No. 8:10-cr-00513-JSM-TGW-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

STUART M. REGISTER,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 4, 2012)

Before MARCUS, COX and SILER,[*] Circuit Judges.

MARCUS, Circuit Judge:

_____

[*] Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting by designation.

Stuart Matthew Register pleaded guilty to seventeen counts of tax-related offenses. The first thirteen concerned his failure to pay over to the Internal Revenue Service ("IRS") federal taxes that had been withheld from the wages of his company's employees. The remaining four concerned the falsification of his individual federal income tax returns. After accepting his plea and holding a sentencing hearing, the district court sentenced him to twenty-seven months in prison. On appeal, Register challenges the district court's calculation of the applicable guideline range under the United States Sentencing Guidelines Manual ("Guidelines" or "U.S.S.G.").[1] Specifically, he argues that the district court erred by refusing to group all of his counts into a single group pursuant to U.S.S.G. § 3D1.2(b) or (d) as "counts involving substantially the same harm."

We agree. All seventeen of Register's counts should have been grouped under § 3D1.2(d) because their offense level is determined largely on the basis of the amount of loss, the underlying offenses are of the same general type, and, in this case, grouping serves § 3D1.2's principal purpose of grouping closely related counts. Accordingly, we vacate Register's sentence and remand for resentencing.

I.

---

[1] All references to the Guidelines refer to the U.S. Sentencing Guidelines Manual (2010) (effective Nov. 1, 2010).

A.

Register was the owner and operator of Criminal Research Bureau, Inc. ("CRB"), a provider of background-check services for employers. To manage the CRB payroll, he used a payroll processing company, PrimePay, that prepared employee paychecks and submitted the necessary quarterly paperwork to the IRS. Register, in turn, was responsible for paying the taxes withheld over to the IRS. From the first quarter of 2003 through the fourth quarter of 2007, federal income taxes and Federal Insurance Contributions Act ("FICA") taxes totaling $316,220 were withheld from the wages of CRB employees, yet Register never remitted the vast majority of those funds to the IRS.[2]

In addition, Register falsified his individual federal income tax returns during this period for tax years 2003 to 2006. In 2003 and 2004, he was not on the CRB payroll; instead, he paid his personal expenses directly from the company bank account. Initially, he filed no federal returns at all for these years. However, in order to qualify for a mortgage, Register ultimately filed his 2003 and 2004 returns late. In doing so, he generated Form W-2s that falsely indicated that he had been paid wages and that federal taxes had been withheld. He then used those

---

[2] Register did make two partial payments in the first two quarters of 2003, totaling $8,417.82.

3

figures to complete his Form 1040s for both years, enabling him to fraudulently collect refunds of $4,444.50 for tax year 2003 and $7,479.13 for tax year 2004. In 2005 and 2006, Register added himself to the CRB payroll as an employee with an annual salary of $234,000. Again, however, he falsified his Form 1040s to indicate that federal taxes had been withheld from his salary when in fact none had been withheld. As a result, Register collected refunds of $6,689.12 for tax year 2005 and $10,780 for tax year 2006 when, in reality, he owed $45,098 and $40,905 for those tax years respectively.

B.

On December 8, 2010, Register was indicted on thirteen counts of willful failure to pay over taxes in violation of 26 U.S.C. § 7202.[3] Each count charged that federal income taxes and FICA taxes had been withheld from the wages of CRB employees during a particular quarter but were never paid over to the IRS. The thirteen failure-to-pay-over counts in the indictment covered the period from the fourth quarter of 2004 through the fourth quarter of 2007. Register was also

---

[3] Section 7202 provides:

Any person required under this title to collect, account for, and pay over any tax imposed by this title who willfully fails to collect or truthfully account for and pay over such tax shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecution.

indicted on four counts of filing false individual federal income tax returns in violation of 26 U.S.C. § 7206(1).[4] Each count charged that Register had falsely stated on his return for a particular year that federal income tax had been withheld when, in fact, he knew that it had not. The four filing-false-returns counts in the indictment covered the 2003 through 2006 tax years. Register pleaded guilty to all seventeen counts without a plea agreement.

The probation officer who prepared the presentence investigation report ("PSI") calculated the applicable sentencing guideline range by grouping all of Register's failure-to-pay-over counts (under 26 U.S.C. § 7202) together into one group and all of his filing-false-returns counts (under 26 U.S.C. § 7206(1)) together into another, separate group. The probation officer stopped short, however, of grouping all of the counts into a single group, explaining that since the two types of counts "do not involve the same harm, they do not meet the criteria under USSG § 3D1.2(a)-(c) and cannot be grouped." Next, the probation officer calculated the amount of tax loss for the failure-to-pay-over group at

---

[4] Section 7206(1) provides:

Any person who . . . [w]illfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter . . . shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 . . . , or imprisoned not more than 3 years, or both, together with the costs of prosecution.

$316,220, resulting in a base offense level of 18, and the amount of tax loss for the filing-false-returns group at $115,395.75, resulting in a base offense level of 16. Because there were multiple groups, the probation officer then applied § 3D1.4 to determine their combined offense level. Taking the group with the highest offense level, the failure-to-pay-over group at 18, and increasing that offense level by 2 based on § 3D1.4, the probation officer determined the combined offense level to be 20. Finally, the probation officer accounted for Register's acceptance of responsibility and cooperation in the investigation by applying a 3-level reduction pursuant to § 3E1.1 to arrive at a total offense level of 17. Because Register had no prior convictions, his criminal history category was I, and the resulting guideline range was 24 to 30 months.

Both Register and the United States objected to the probation officer's failure to group all seventeen counts together under either U.S.S.G. § 3D1.2(b) or (d). In response, the probation officer offered the following explanation:

> The guidelines direct under USSG § 3D1.2 that counts can be grouped together when they involve substantially the same harm. Under subsection (b), counts can be grouped together when they involve the same victim and two or more acts connected by a common criminal objective or common scheme or plan. Under subsection (d) counts can be grouped together when the offense level is determined largely on the basis of the total amount of harm or loss. The defendant has been convicted of 17 counts representing two offenses: Failure to Pay Over Taxes to the [IRS] and Filing Fraudulent Federal Income Tax Returns.

6

During the years 2004 through 2007, the defendant failed to pay over employment taxes to the IRS for his employees. In addition, during the same period, he failed to pay income taxes on his own income and claimed inflated amounts of federal income tax withheld causing the IRS to pay him refunds that he was not entitled to. Although the IRS is the ultimate victim in both endeavors, the probation office views the defendant's criminal behavior as two separate criminal objectives with two separate harms. It does not appear that the defendant committed both acts to specifically defraud the IRS. It does appear that the acts occurred as a result of his lifestyle and/or his personal financial situation. His behavior was not part of a <u>single</u> course of conduct with a <u>single</u> criminal objective.

At the sentencing hearing on May 31, 2011, Register and the United States again agreed that all of the counts should be grouped for sentencing. The district court, however, disagreed with both parties and sided with the probation officer. The court rejected the argument that the counts should all be grouped together under subsection (b), because they did not involve the same criminal objective or the same victim. And the court rejected the alternative argument that the counts should all be grouped together under subsection (d), because it "seem[ed] unusual" to aggregate the losses for two different offenses merely because the offense level for each is determined largely on the basis of the total amount of loss. Register also raised another objection -- not at issue on appeal -- alleging that the $86,003 in unpaid taxes attributable to his income as a CRB employee in

2005 and 2006 had been double counted by including it in both groups.[5]  On this point, the district court agreed.  Therefore, the district court ultimately concluded that the total offense level was 16, which yielded a guideline range of 21 to 27 months.  (If the district court had actually grouped together all seventeen counts, Register's total offense level would have been 15 instead of 16, yielding a guideline range of 18 to 24 months.)

Register and the United States each sought a sentence at the low end of the guideline range.  The district court, however, sentenced Register to 27 months, the top of the range, on each of the seventeen counts, all to run concurrently.  Additionally, the court imposed a three-year term of supervised release; restitution in the amount of $345,612.87; and a special assessment of $1,700.  Register timely appealed.

## II.

We review the procedural reasonableness of a sentence, which includes

---

[5] That is, the amount had been included once as part of the taxes withheld from the wages of CRB employees but never paid over to the IRS, because Register was himself an employee in 2005 and 2006.  Then the amount had been included again as part of the taxes owed on Register's individual returns for those years because, although he had claimed the taxes had already been withheld, the IRS never in fact received the money.  The government conceded that it could only be counted once but recommended including the amount in the filing-false-returns group.  Register, on the other hand, argued that it was properly part of the failure-to-pay-over group.  After admitting that "it could go either way," the district court chose to include the amount in the failure-to-pay-over group.

whether the guideline range was properly calculated, under an abuse-of-discretion standard. Gall v. United States, 552 U.S. 38, 51 (2007). However, "the degree of deference that is due varies with the type of procedural error alleged." United States v. Ellisor, 522 F.3d 1255, 1273 n.25 (11th Cir. 2008). "A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous." Id. (quoting Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1096 (11th Cir. 2004)). Accordingly, we review the district court's interpretation of the Guidelines and its application of the Guidelines to the facts de novo, but we review its findings of fact only for clear error. Id.

Under the Sentencing Guidelines, counts are to be grouped together for purposes of calculating the appropriate guideline range whenever they involve "substantially the same harm." U.S.S.G. § 3D1.2. Section 3D1.2(d) provides, in pertinent part, that counts involve substantially the same harm "[w]hen the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm." The Sentencing Commission anticipated that "[s]ubsection (d) [would] likely . . . be used with the greatest frequency," explaining that it "provides that most property crimes (except robbery, burglary, extortion and the like), drug offenses, firearms

9

offenses, and other crimes where the guidelines are based primarily on quantity or contemplate continuing behavior are to be grouped together." U.S.S.G. § 3D1.2 cmt. n.6.

Subsection (d) includes a list of guidelines covering offenses predetermined to meet its requirements and provides that they "are to be grouped."[6] U.S.S.G. § 3D1.2(d). Nevertheless, when the counts involve offenses to which different guidelines apply, grouping is not automatic even if all of the applicable guidelines are included in this list. United States v. Harper, 972 F.2d 321, 322 (11th Cir. 1992) (per curiam). Rather, "[c]ounts involving offenses to which different offense guidelines apply are grouped together under subsection (d) if the offenses are of the same general type and otherwise meet the criteria for grouping under this subsection." U.S.S.G. § 3D1.2(d) cmt. n.6. "The 'same general type' of offense is to be construed broadly." Id. In addition, our cases have required that the offenses not only be similar in a general sense but also "closely related" on the facts of the particular case. Harper, 972 F.2d at 322 ("[D]rug trafficking and money laundering are not crimes 'of the same general type;' nor are these offenses, under these facts, closely related."). Compare United States v. Mullens,

---

[6] In addition, subsection (d) includes a list of guidelines covering offenses that are "[s]pecifically excluded from the operation of this subsection." U.S.S.G. § 3D1.2(d). Offenses appearing on neither list must be evaluated on a case-by-case basis. Id.

65 F.3d 1560, 1564 (11th Cir. 1995) (grouping together money laundering and fraud counts where both "were integral cogs in continuing the scheme"), with United States v. McClendon, 195 F.3d 598, 602 (11th Cir. 1999) (per curiam) (refusing to group together money laundering and fraud counts where "the main connection between the laundered funds and the fraud scheme [was] that the money represented the proceeds of the fraud").

As an initial matter, we have no difficulty concluding that Register's offenses "otherwise meet the criteria for grouping under [subsection (d)]." The applicable guideline for the failure-to-pay-over counts is § 2T1.6, entitled "Failing to Collect or Truthfully Account for and Pay Over Tax," and the applicable guideline for the filing-false-returns counts is § 2T1.1, entitled "Tax Evasion; Willful Failure to File Return, Supply Information, or Pay Tax; Fraudulent or False Returns, Statements, or Other Documents." Inasmuch as both guidelines are expressly included in the "are to be grouped" together list, they clearly "otherwise meet the criteria" for grouping under subsection (d). See U.S.S.G. § 3D1.2(d).

We next consider whether the offenses here are "of the same general type" and "closely related" on the facts of this case. Although Register's failure-to-pay-over counts under § 7202 and filing-false-returns counts under § 7206(1) are governed by different guidelines, we conclude that the underlying

11

offenses are "of the same general type." Both are tax offenses governed by the Internal Revenue Code and Part T of the Sentencing Guidelines. The "measure of aggregate harm" is the same in both, since each involves a monetary objective. See U.S.S.G. § 3D1.2 cmt. n.6 ex. 3 ("The defendant is convicted of five counts of mail fraud and ten counts of wire fraud. Although the counts arise from various schemes, each involves a monetary objective. All fifteen counts are to be grouped together."). And while the guidelines themselves may be different, notably, the base offense level for both is determined by looking up the amount of tax loss in the same Tax Table located at § 2T4.1.

Moreover, on the facts of this case, grouping the offenses serves § 3D1.2's principal purpose of "combin[ing] offenses involving closely related counts." Harper, 972 F.2d at 322. The failure-to-pay-over counts alleged that Register withheld taxes from the wages of CRB employees but never paid them over to the IRS. Yet the basis of the filing-false-returns counts was that Register had lied about whether federal income taxes had already been withheld from his wages. The similarity between the offenses is exemplified by the government's accidental double counting of the taxes attributable to Register's salary as a CRB employee in 2005 and 2006 and, once the mistake had been pointed out, by the district court's ensuing difficulty in deciding in which of the two groups the amount

belonged.  As the district court conceded, it could have gone either way, and this fact is telling.  Not only were the offenses here closely related, there was substantial overlap in the underlying offense conduct.

Finally, we are unpersuaded by the reasons offered by the government for why these counts should not be grouped.  The government says that "crimes are not 'of the same general type' if they involve different schemes, different objectives, and different victims, and took place at different times."  However, these proscriptions appear neither in the text of § 3D1.2(d), nor in the accompanying commentary, nor in our precedent.  Unlike subsections (a) and (b), subsection (d) imposes no "same victim" requirement.  See U.S.S.G. § 3D1.2 cmt. background ("Counts involving different victims (or societal harms in the case of 'victimless' crimes) are grouped together only as provided in subsection (c) or (d).").  Furthermore, unlike subsection (b), there is no requirement in subsection (d) that the counts involve a common criminal objective or a common scheme.  On the contrary, an example offered in the commentary states that grouping together is proper under subsection (d) "[a]lthough the counts arise from various schemes." See U.S.S.G. § 3D1.2(d) cmt. n.6 ex. 3.  Finally, there is no prohibition in subsection (d) against grouping counts that occurred at different times.

Inasmuch as the prerequisites for grouping under subsection (d) are met, all

13

seventeen of Register's counts should have been grouped together under

§ 3D1.2(d).[7]  We therefore VACATE Register's sentence and REMAND to the

district court for resentencing consistent with this opinion.

---

[7] Because we find that all of Register's counts should have been grouped under § 3D1.2(d), we need not address Register's argument that subsection (b) provides an independent basis for grouping.