[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-14356
Non-Argument Calendar
_____

D.C. Docket No. 2:11-cr-00026-MEF-SRW-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JAMES E. MOSS and
AVADA L. JENKINS,

Defendants - Appellants.

_____

Appeals from the United States District Court
for the Middle District of Alabama

_____

(November 5, 2013)

Before MARCUS, JORDAN and KRAVITCH, Circuit Judges.

PER CURIAM:

James Moss and Avada Jenkins appeal their convictions and sentences for

conspiracy to defraud the United States, in violation of 18 U.S.C. § 371, and aiding

and assisting in the preparation and presentation of false tax returns, in violation of 26 U.S.C. § 7206(2).  On appeal, Mr. Moss and Ms. Jenkins raise two common arguments: (1) the evidence presented at trial was insufficient to support their convictions, and (2) their sentences were procedurally unreasonable because the district court improperly calculated the total amount of tax loss (which impacted their base offense level and, correspondingly, their advisory guideline imprisonment range).  In addition, Mr. Moss challenges the district court's finding that he obstructed justice, resulting in a two-level sentencing enhancement pursuant to U.S.S.G. § 3C1.1.

The evidence at trial established that Mr. Moss was the owner of Flash Tax, a tax preparation business, and that Ms. Jenkins worked for Mr. Moss as a tax preparer.  Seven former Flash Tax employees testified at trial that Mr. Moss trained his employees to fraudulently prepare tax returns in order to artificially inflate the total refund amount claimed on the returns.  To do this, Mr. Moss instructed the employees to, among other things, fabricate self-employment income and falsify business losses on a Schedule C form.  Twenty former Flash Tax customers also testified against Mr. Moss and Ms. Jenkins, confirming that Flash Tax had included false information on their returns.

## I. SUFFICIENCY OF THE EVIDENCE

Upon review of an appeal from the denial of a motion for a judgment of acquittal, we review *de novo* whether there was sufficient evidence to support the convictions. *United States v. Verbitskaya*, 406 F.3d 1324, 1334-35 (11th Cir. 2005). We view the evidence in the light most favorable to the government, resolving any conflicts in favor of its case. *United States v. Frank*, 599 F.3d 1221, 1233 (11th Cir. 2010). If a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt, the evidence is sufficient to support a conviction even if the evidence might also support the defendant's theory of innocence. *United States v. Tinoco*, 304 F.3d 1088, 1122 (11th Cir. 2002). "Credibility determinations are the exclusive province of the jury" and may not be revisited unless the testimony is "incredible as a matter of law." *United States v. Calderon*, 127 F.3d 1314, 1325 (11th Cir.1997) (citations omitted).

### A. Conspiracy to Defraud the United States: 18 U.S.C. § 371

Under 18 U.S.C. § 371, it is a crime to "conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose." "The elements of a conspiracy under 18 U.S.C. § 371 are: (1) an agreement among two or more persons to achieve an unlawful objective; (2) knowing and voluntary participation in the agreement; and (3) an overt act by a conspirator in furtherance of the agreement." *United States v. Hasson*, 333 F.3d 1264, 1270 (11th Cir. 2003). The government may prove a

3

conspiracy with circumstantial evidence alone "[b]ecause the essential nature of conspiracy is secrecy." *United States v. Adkinson*, 158 F.3d 1147, 1153 (11th Cir. 1998). Certain inferences based on a defendant's conduct may demonstrate agreement and intent. *United States v. Silvestri*, 409 F.3d 1311, 1328 (11th Cir. 2005) (agreement); *United States v. LaSpesa*, 956 F.2d 1027, 1035 (11th Cir. 1992) (intent).

The evidence at trial enabled the jury to reasonably conclude that Mr. Moss and Ms. Jenkins, along with the other Flash Tax employees, knowingly agreed to prepare fraudulent tax returns and thus defraud the government. *See Hasson*, 333 F.3d at 1270. As to Mr. Moss, several former Flash Tax employees testified in detail about how he trained them to fill out customers' tax returns with false information to maximize their tax refunds. Despite Mr. Moss' argument that this testimony was contradictory and biased, a reasonable jury could easily have credited their description of trainings at Mr. Moss' home where he encouraged employees to "play" with clients' income and business losses to hit the "sweet spot" for maximum tax refunds. Moreover, the testimony of over 20 Flash Tax employees, as well as undercover tax agents, confirmed the existence of the tax fraud scheme and the fact that Mr. Moss himself prepared multiple fraudulent tax returns, thus satisfying the overt act requirement for conspiracy. *See Hasson*, 333 F.3d at 1270.

As to Ms. Jenkins, the evidence at trial established that she regularly attended the Flash Tax training sessions led by Mr. Moss. Additionally, Ms. Jenkins' coworkers testified that they worked alongside Ms. Jenkins in the same office and that she prepared the tax returns in the same way that Mr. Moss and the rest of the employees did. Several Flash Tax customers testified that she fraudulently prepared their tax returns. The jury could reasonably find, based on this conduct, that Ms. Jenkins knowingly agreed with Mr. Moss and her coworkers to defraud the government through the preparation of false tax returns. *See United States v. Silvestri*, 409 F.3d 1311, 1328 (11th Cir. 2005) (conspiratorial agreement can be inferred from conduct); *United States v. LaSpesa*, 956 F.2d 1027, 1035 (11th Cir. 1992) (same for intent).

Finally, as noted above, the abundant testimony establishing that Ms. Jenkins and Mr. Moss prepared fraudulent tax returns satisfies the overt act requirement. *See Hasson*, 333 F.3d at 1270. Accordingly, sufficient evidence supported the convictions of Mr. Moss and Ms. Jenkins for conspiracy to defraud the United States.

### B. Aiding and Assisting in the Preparation and Presentation of False Tax Returns: 26 U.S.C. § 7206(2)

In order to establish a violation under 26 U.S.C. § 7206(2), the government must prove that the defendant (1) willfully and knowingly aided or assisted (2) in the preparation or filing of a federal income tax return (3) that contained material

5

statements that the defendant knew to be false.  26 U.S.C. § 7206(2). *See also United States v. Kottwitz*, 614 F.3d 1241, 1269, *opinion withdrawn in part on denial of reh'g*, 627 F.3d 1383 (11th Cir. 2010). Additionally, a defendant who participates in a conspiracy may be held criminally liable for reasonably foreseeable substantive offenses committed in furtherance of the conspiracy even if he did not personally participate in those offenses. *See Pinkerton v. United States*, 328 U.S. 640, 647-48, 66 S.Ct. 1180, 1184, 90 L.Ed. 1489 (1946).

The evidence at trial established that Mr. Moss prepared fraudulent returns for at least seven of the Flash Tax customers who testified at trial. The evidence further showed that Ms. Jenkins, likewise, prepared fraudulent returns for at least six Flash Tax customers. In addition, as the evidence was sufficient to establish that Mr. Moss and Ms. Jenkins were engaged in the conspiracy, they could also be held criminally liable for the reasonably foreseeable offenses of their co-conspirators, i.e., the fraudulent returns prepared by the other Flash Tax employees. *See Pinkerton*, 328 U.S. at 647-48. Accordingly, the evidence was sufficient to support the convictions of Mr. Moss and Ms. Jenkins.

## II. PROCEDURAL REASONABLENESS

We review the procedural reasonableness of a sentence, including whether the guideline range was properly calculated, for abuse of discretion. *United States v. Register*, 678 F.3d 1262, 1266 (11th Cir. 2012). Additionally, we review the

6

district court's calculation of the amount of tax loss for clear error. *United States v. Patti*, 337 F.3d 1317, 1323 (11th Cir. 2003). For a district court's factual findings to be clearly erroneous, we "must be left with a definite and firm conviction that a mistake has been committed." *United States v. Rodriguez-Lopez*, 363 F.3d 1134, 1137 (11th Cir. 2004) (quotations omitted).

"[T]he district court must impose a procedurally and substantively reasonable sentence." *United States v. Gonzalez*, 550 F.3d 1319, 1323 (11th Cir. 2008). A sentence is procedurally unreasonable if, among other things, the district court failed to calculate or incorrectly calculated the guideline range. *Gall v. United States*, 552 U.S. 38, 51 (2007). The party challenging the sentence has the burden of establishing that the sentence was unreasonable. *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005).

Where a tax violation results in a tax loss to the government, a defendant's base offense level is determined under the tax table listed in U.S.S.G. § 2T4.1. *See* U.S.S.G. § 2T1.1(a)(1). For a tax loss of more than $7 million but less than $20 million, the defendant's base offense level is 26. *See* U.S.S.G. § 2T4.1(K). The Guidelines define "tax loss" as "the total amount of loss that was the object of the offense (i.e., the loss that would have resulted had the offense been successfully completed)." U.S.S.G. § 2T1.1(c)(1). "The guidelines do not require the government to make a fraud loss determination with precision; the figure need only

be a reasonable estimate given the information available to the government." *United States v. Cabrera*, 172 F.3d 1287, 1292 (11th Cir. 1999). "Upon challenge, however, the government bears the burden of supporting its loss calculation with reliable and specific evidence." *Id.* (quotation marks omitted).

The district court did not clearly err in calculating that the total tax loss to the government was between $7 and $20 million. There is some dispute between the parties as to which method of calculation the district court relied on in arriving at this estimate. The district court articulated two main rationales for its estimate, and we conclude that at least was appropriate. *See United States v. Gonzalez*, 71 F.3d 819, 825 (11th Cir. 1996) (where one of the district court's rationales is adequate, "we need not decide whether the district court's alternative rationales would likewise suffice").

The first rationale, and the one on which we affirm, consists of the following simple calculation: the total amount of tax refunds claimed during the conspiracy multiplied by the percentage of these refunds estimated to be fraudulent. The presentence investigation reports for Mr. Moss and Ms. Jenkins calculated the total refund amount to be $29,853,277. The court then estimated the total percentage of fraudulent returns to be 50% (which was conservative given that the evidence at trial indicated that as many as 80% to 95% of the tax returns were fraudulent). The resulting estimate of total tax loss is around $15 million, well within the $7 million

8

to $20 million range.  Even if the district court had used a more conservative estimate of 25% for the fraudulent-return percentage (which Ms. Jenkins concedes to be the percentage supported by the evidence), the amount would still be over $7 million.  Thus, the district court did not clearly err in finding the tax loss to be in this range.

The other method of calculation raises questions about statistical sampling that we need not address here.  We merely note that, if we make the assumption that the 27 returns analyzed by agent Wilson are representative of *the returns that are fraudulent* (not of *all* the returns), and we adopt the 50% fraudulent-return percentage discussed above, the result is more or less the same as above.[1]

As the district court did not clearly err in finding that the total tax loss was between $7 and $20 million, both Mr. Moss and Ms. Jenkins were properly assigned a base offense level of 26 under the Guidelines.  *See* U.S.S.G. § 2T4.1(K). Accordingly, Mr. Moss' and Ms. Jenkins' sentences were procedurally reasonable.

### III. MR. MOSS' OBSTRUCTION OF JUSTICE ENHANCEMENT

---

[1] Agent Wilson pulled 100 tax returns that had "indicators of fraud" out of the total 8,263 returns filed by Flash Tax during the relevant period.  He then selected 27 of those returns that he knew to be fraudulent and analyzed the average amount of fraudulent tax refund claimed by each, which he calculated to be $3,261.54.  By multiplying the total number of returns filed during the Flash Tax conspiracy by the average refund amount of the fraudulent returns he reviewed, he arrived at a total loss amount of $26,950,105.02.  To account for the possibility of non-fraudulent returns, the IRS agent divided the total figure by two, arriving at a total estimated tax loss of $13,475,052.51.

We review the district court's application and interpretation of the Sentencing Guidelines *de novo*, and the court's factual findings for clear error. *United States v. Smith*, 480 F.3d 1277, 1278 (11th Cir. 2007).  We therefore review the district court's factual finding that a defendant obstructed justice only for clear error.  *United States v. Tapia*, 59 F.3d 1137, 1144 (11th Cir. 1995).

Under the Sentencing Guidelines, the obstruction of justice enhancement applies where "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction."  U.S.S.G. § 3C1.1.  This includes "threatening, intimidating, or otherwise unlawfully influencing a . . . witness, . . . directly or indirectly, or attempting to do so." *United States v. Snipes*, 611 F.3d 855, 871 (11th Cir. 2010) (quoting U.S.S.G. § 3C1.1 cmt. n. 4(a)). In particular, we have held that urging a potential witness to lie falls within the definition of "unlawfully influencing . . . a witness." *United States v. Amadeo*, 370 F.3d 1305, 1319 (11th Cir. 2004).

In applying the obstruction enhancement, the district court relied on the testimony of former Flash Tax employees that Mr. Moss instructed them to lie to his attorney and blame another Flash Tax employee for teaching them how to prepare the fraudulent tax returns, as well as on other evidence establishing that

10

Mr. Moss instructed his attorney to send these false statements to the IRS.[2]  Given this evidence, the district court did not clearly err in finding that Mr. Moss willfully attempted to obstruct the IRS' investigation such that the obstruction enhancement would apply.  *See* U.S.S.G. § 3C1.1.

### III. CONCLUSION

The convictions and sentences of Mr. Moss and Ms. Jenkins are affirmed.

**AFFIRMED.**

---

[2] Mr. Moss argues that the district court improperly relied on evidence of his underlying offense (that Mr. Moss had for years trained his employees to file false tax returns) in applying the obstruction enhancement.  Mr. Moss, however, misunderstands the district court's reasoning. The fact that Mr. Moss trained his employees to file false returns goes to whether Mr. Moss urged his employees to lie (and thus improperly influenced witnesses).  If Mr. Moss had not trained the employees to file fraudulent tax returns, then he likely did not urge his employees to lie by asking them to state that someone other than Mr. Moss had trained them to file false tax returns.  In short, establishing that Mr. Moss had done X was a precondition to establishing that Mr. Moss had asked others to lie by stating that Mr. Moss did not do X.