[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-11161
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cr-00101-WSD-GGB-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DEMARCO DOXIE,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(January 4, 2016)

Before HULL, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

After pleading guilty, Defendant Demarco Doxie appeals his total 53-month sentence for 21 counts of mail fraud, 41 counts of wire fraud, and 4 counts of filing a false tax return, in violation of 18 U.S.C. §§ 1341 and 1343, and 26 U.S.C. § 7206(1) respectively.  On appeal, Doxie argues that his sentence is procedurally unreasonable because the district court improperly grouped his 66 counts under U.S.S.G. § 3D1.2 to determine his total offense level.  After review, we find no grouping error and affirm.

## I.  BACKGROUND

### A.    Offense Conduct

Between 2007 and 2011, Defendant Doxie was employed by Ennis Paint as its Corporate Environmental Health and Safety Manager.  During this time, Doxie defrauded Ennis Paint by creating and submitting fictitious invoices for environmental work ostensibly performed by a company called Outlook. Unbeknownst to Ennis Paint, Doxie was the owner and sole employee of Outlook, and Outlook had not performed the invoiced work. As a result of Doxie's actions, Ennis Paint mailed checks totaling $642,196.00 to the address on Outlook's false invoices, which were then deposited into Outlook's bank account.

In addition to the false invoices, Defendant Doxie charged payments to Outlook for work-related expenses totaling $287,466.33 using an employer-issued corporate credit card, even though Outlook had not actually performed any work.

2

Doxie also used his corporate credit cards to pay for his personal expenses, which totaled $80,194.58.

Meanwhile, for the tax years 2008, 2009, 2010 and 2011, Defendant Doxie did not report the income he received from defrauding Ennis Paint on his income tax returns.  Consequently, Doxie underpaid his taxes by a total of $299,750.00.

In 2014, Doxie pled guilty to 21 counts of mail fraud for the false invoices (Counts 1 to 21), 41 counts of wire fraud for the false credit card charges (Counts 22 to 62), and 4 counts of filing a false tax return for the four tax years (Counts 63 to 66).

## B.    Guidelines Calculations

At sentencing, the district court, over Doxie's objection, grouped the 62 counts of mail fraud and wire fraud together in one group (Group 1) and grouped the 4 counts of filing a false tax return as a second group (Group 2) to determine Doxie's total offense level under Chapter 3 of the Sentencing Guidelines.  In particular, for the fraud offenses in Group 1, the district court calculated a base offense level of 7, pursuant to U.S.S.G. § 2B1.1(a)(1); added 16 levels because the loss amount exceeded $1,000,000, but was less than $2,500,000, pursuant to § 2B1.1(b)(1)(I); and added two levels for abuse of a position of trust, pursuant to § 3B1.3, which resulted in an adjusted offense level of 25.

As to the tax offenses in Group 2, the district court calculated a base offense level of 18, pursuant to § 2T1.1(a)(1), because there was a tax loss of more than $200,000, but less than $400,000, and added two levels because the source of the unreported income was from criminal activity, pursuant to § 2T1.1(b)(1), for an adjusted offense level of 20.

Doxie argued the mail and wire fraud counts in Group 1 should be further grouped with the four tax counts in Group 2 under § 3D1.2 (c) or (d). The government argued that neither subsection (c) nor (d) of § 3D1.2 required Doxie's tax and fraud counts to be grouped together and that grouping was inappropriate here because the tax and fraud counts involve different types of offense conduct and different societal interests, and thus are not "closely related." **[Doc. 102]** The district court agreed with the government and concluded that "the mail and wire fraud counts and the tax failure to report income counts are not grouped" under § 3D1.2(c) or (d).

Then, using Group 1's offense level of 25 because it was the higher offense level, the district court imposed a one-level multi-count increase pursuant to § 3D1.4, for an combined offense level of 26. The effect of the district court's

grouping decision was to increase Doxie's offense level by one level and his advisory guidelines range from 46 to 57 months to 51 to 63 months. [1]

After a two-point reduction for acceptance of responsibility, pursuant to § 3E1.1(a), Doxie's total offense level was 24. With a criminal history category of I, Doxie's advisory guidelines range was 51 to 63 months.

After considering the parties' arguments, an extended allocution from Doxie, and the 18 U.S.C. § 3553(a) factors, the district court imposed 53-month sentences on Counts 1 through 62 and 36-month sentences on Counts 63 through 66, all to run concurrently, followed by 3 years' supervised release. Doxie timely appealed his sentence. The only issue on appeal is whether the tax counts should have been grouped with the mail and wire fraud counts.

## II.  DISCUSSION

### A.    Grouping Counts Under U.S.S.G. § 3D1.2

Although the Sentencing Guidelines are now advisory after United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), the district court still must calculate the advisory guidelines range correctly. United States v. Pugh, 515 F.3d 1179, 1190 (11th Cir. 2008). A sentence based on a miscalculated advisory guidelines

---

[1]To determine the combined offense level under U.S.S.G. § 3D1.4, the district court takes the offense level for the group with the highest offense level and increases it based on a table. U.S.S.G. § 3D1.4. In Doxie's case, to apply the table, the district court combined "one Unit" for Group 1 to "one-half Unit" for Group 2, for a total of 1½ Units. See U.S.S.G. § 3D1.4(a) & (b). Under the table, a total of 1½ Units called for a one-level increase in the highest offense level, which in Doxie's case was offense level 25 for Group 1. See Id. § 3D1.4. Thus, Doxie's combined offense level was 26.

range is procedurally unreasonable.  See Gall v. United States, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007).[2]

In Part D of Chapter 3, the Sentencing Guidelines provide rules for grouping multiple counts together.  According to the Introductory Commentary, the underlying goals of Part D are "to provide incremental punishment for significant additional criminal conduct," and "to limit the significance of the formal charging decision and to prevent multiple punishment for substantially identical offense conduct."  See U.S.S.G. ch.3, pt. D, introductory cmt.  To that end, when a defendant is convicted of multiple counts, the Sentencing Guidelines instruct the district court to group "closely related" counts of conviction according to the rules in § 3D1.2 before determining each group's offense level and the combined offense level for all the counts.  See U.S.S.G. § 3D1.1; see also United States v. Marseille, 377 F.3d 1249, 1254 (11th Cir. 2004).

Under § 3D1.2 "counts are to be grouped together for purposes of calculating the appropriate guideline range whenever they involve 'substantially the same harm.'"  United States v. Register, 678 F.3d 1262, 1266 (11th Cir. 2012) (quoting § 3D1.2).  Section 3D1.2 further provides circumstances in which counts involve substantially the same harm, as follows:

---

[2]This Court reviews the reasonableness of a sentence for abuse of discretion.  Pugh, 515 F.3d at 1190.  We review de novo the sentencing court's application of the Sentencing Guidelines, including whether the court correctly grouped the offenses of conviction.  United States v. Williams, 340 F.3d 1231, 1244 (11th Cir. 2003).

(a)    When counts involve the same victim and the same act or transaction.

(b)    When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.

(c)    When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.

(d)    When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

U.S.S.G. § 3D1.2(a)-(d).  "Counts involving different victims (or societal harms in the case of 'victimless crimes') are grouped together only as provided in subsection (c) or (d)."  U.S.S.G. § 3D1.2 cmt. background.  Because the "decision as to whether to group [multiple counts] together may not always be clear cut," the Background Commentary to § 3D1.2 instructs courts to "look to the underlying policy of this Part as stated in the Introductory Commentary" when "interpreting this Part and resolving ambiguities."  Id.

On appeal, the parties agree that neither (a) nor (b) of § 3D1.2 applies because the victim of Doxie's fraud counts, Ennis Paint, is distinct from the victim of his tax counts, the Internal Revenue Service.  Doxie argues, however, that the district court should have grouped his tax counts together with his mail and wire fraud counts under either § 3D1.2(c) or (d).

7

**B.      U.S.S.G. § 3D1.2(c) and (d)**

Section 3D1.2(c) calls for grouping counts where "conduct that represents a separate count, e.g., bodily injury or obstruction of justice, is also a specific offense characteristic in or other adjustment to another count.  Id. § 3D1.2 cmt. n.5. Subsection (c) is intended to prevent double counting of offense behavior, but it "applies only if the offenses are closely related."  Id.; see also United States v. Jimenez-Cardenas, 684 F.3d 1237, 1239-40 (11th Cir. 2012) (concluding that the defendant's illegal reentry and possession of a firearm counts harmed different societal interests and were not sufficiently closely related to warrant grouping under § 3D1.2(c)).

Section 3D1.2(d) calls for grouping of "crimes where the guidelines are based primarily on quantity or contemplate continuing behavior," such as property crimes and drug offenses.  U.S.S.G. § 3D1.2 cmt. n.6.  Subsection (d) contains a list of guidelines covering offenses that "are to be grouped" and another list of guidelines covering offenses that are explicitly excluded.  Id. § 3D1.2(d).  Included in the first, "to be grouped" list are both § 2B1.1 and § 2T1.1, the guidelines applicable to wire and mail fraud and filing a false tax return, respectively.  Id.

It is well-settled in this Circuit, however, that "the 'mere listing' of . . . offenses as types that 'are to be grouped does not automatically necessitate grouping [under subsection (d)].'"  United States v. Keen, 676 F.3d 981, 998 (11th

8

Cir. 2012) (quoting in part United States v. McClendon, 195 F.3d 598, 601 (11th

Cir. 1999)); see also United States v. Harper, 972 F.2d 321, 322 (11th Cir. 1992).

This is because the "automatic grouping of offenses listed in the first category can

detract from the purpose of section 3D1.2—'to combine offenses involving closely

related counts.'" McClendon, 195 F.3d at 601 (quoting in part Harper, 972 F.2d at

322). Instead, where, as here, the counts involve "offenses to which different

offense guidelines apply," the counts "are grouped together under subsection (d) if

the offenses are of the same general type and otherwise meet the criteria for

grouping under this subsection." U.S.S.G. § 3D1.2 cmt. n.6; see also Register, 678

F.3d at 1267, McClendon, 195 F.3d at 601-02. Thus, for grouping under

subsection (d), "our cases have required that the offenses not only be similar in a

general sense but also 'closely related' on the facts of the particular case."

Register, 678 F.3d at 1267.

**C.    Analysis**

We conclude that the district court did not err in refusing to group Doxie's

tax offense counts with his wire and mail fraud counts under either (c) or (d) of

§ 3D1.2. We note that the majority of circuits to address this issue have concluded

that fraud counts and tax offense counts involving the proceeds of the fraud should

not be group together under subsection (c) or (d) of § 3D1.2. See, e.g., United

States v. Vucko, 473 F.3d 773, 779-80 (7th Cir. 2007) (addressing subsections (c)

9

and (d)); United States v. Martin, 363 F.3d 25, 43-44 (1st Cir. 2004) (same);

United States v. Shevi, 345 F.3d 675, 681 (8th Cir. 2003) (addressing only

subsection (d)); United States v. Peterson, 312 F.3d 1300, 1304 (10th Cir. 2002)

(addressing subsection (c)); Weinberger v. United States, 268 F.3d 346, 354-55

(6th Cir. 2001) (addressing subsections (c) and (d)); United States v. Lindsay, 184

F.3d 1138, 1142-43 (10th Cir. 1999) (addressing subsection (d)); United States v.

Vitale, 159 F.3d 810, 815 (3rd Cir. 1998) (addressing subsection (c)); United

States v. Seligsohn, 981 F.2d 1418, 1425-26 (3d Cir. 1992) (addressing subsection

(d)).  We agree with the majority of circuits.[3]

As to subsection (c), Doxie's mail and wire fraud counts in Group 1

governed his offense level because they produced the highest offense level.  See

U.S.S.G. § 3D1.4 (explaining that the combined offense level is determined by

taking the offense level for the group with the highest offense level and increasing

it based on a table).  Under § 2B1.1, the mail and wire fraud counts do not have a

---

[3]The only circuit to conclude that fraud counts and tax offense counts should be grouped under § 3D1.2(c) is the Fifth Circuit.  See United States v. Haltom, 113 F.3d 43, 45-47 (5th Cir. 1997).  Other circuits have roundly criticized Haltom.  See, e.g., Vucko, 473 F.3d at 777; Martin, 363 F.3d at 43 n.31; Peterson, 312 F.3d at 1303; Weinberger, 268 F.3d at 354; Vitale, 159 F.3d at 815.

The only circuit to conclude that fraud counts and tax offense counts should be grouped together under § 3D1.2(d) is the Second Circuit.  See United States v. Fitzgerald, 232 F.3d 315, 318-21 (2d Cir. 2000).  Two circuits, the Sixth and the Seventh, have declined to follow Fitzgerald.  See Weinberger, 268 F.3d at 355 n.2; Vucko, 473 F.3d at 780.  And, at least one Second Circuit judge has since suggested that Fitzgerald may be wrongly decided and has called on the Sentencing Commission to "cut through this morass and tell us in plain English whether it wants tax offenses grouped with the offenses that produced the income on which the taxes were evaded."  See United States v. Gordon, 291 F.3d 181, 197-98 (2d Cir. 2002) (Newman, J, concurring).

10

specific-offense-characteristic increase based on the tax offense conduct.  That is, under § 2B1.1, Doxie's offense level was not increased because Doxie failed to report his income obtained from the mail and wire fraud.  See generally U.S.S.G. § 2B1.1.

As Doxie points out, the guideline for tax offenses, U.S.S.G. § 2T1.1, imposes a two-level specific-offense-characteristic increase if the unreported income is from criminal activity.  See U.S.S.G. § 2T1.1(b)(1) & cmt. n.4.  But Doxie's offense level ultimately was not determined by § 2T1.1, but by § 2B1.1, so the specific offense characteristic increase in § 2T1.1(b)(1) did not increase his sentence.[4]

In any event, the specific offense characteristic in § 2T1.1(b)(1) does not address fraud conduct in particular nor adjust depending on the seriousness of the underlying criminal activity.  Instead, the two-level increase applies regardless of the type of criminal activity that resulted in unreported income.  See U.S.S.G. § 2T1.1(b)(1) & cmt. n.4.  The purpose of the two-level increase is not to account

---

[4]We note that the two-level increase under § 2T1.1(b)(1) from level 18 to level 20 did not affect the number of Units used to calculate Doxie's combined offense level under § 3D1.4.  See U.S.S.G. § 3D1.4(b) (counting as "one-half Unit any Group that is **5** to **8** levels less serious than the Group with the highest offense level").  Stated another way, if Doxie's tax offenses had not involved a failure to report income derived from criminal activity, his Group 2 offense level of 18 still would have resulted in one-half Unit under § 3D1.4(b) and his combined offense level would have remained 26 under § 3D1.4.  This fact distinguishes Doxie's case from the defendant's in Haltom.  See Haltom, 113 F.3d at 46-47 & n.5 (concluding that the defendant's mail fraud "counted twice toward his sentence" because "the enhanced tax evasion count was directly responsible for the ultimate 2-level increase" under § 3D1.4).

for the underlying criminal activity, but rather to adjust for the fact that "[c]riminally derived income is generally difficult to establish," making the tax loss "tend to be substantially understated." Id. § 2T1.1 cmt. background. Thus, Doxie's fraud counts are not "embodie[d]" by the conduct treated as a specific offense characteristic in § 2T1.1(b)(1), and grouping the tax and fraud counts separately does not result in double counting. Id. § 3D1.2(c) & cmt. n.5. [5]

As for subsection (d) of § 3D1.2, although both guidelines—§ 2B1.1 and § 2T1.1—are included in the "to be grouped" list, they are not "of the same general type." The tax offenses are governed by the Internal Revenue Code in Title 26, rather than the criminal code in Part I of Title 18. Likewise, the offense level for the tax offenses are governed by a different part of the Sentencing Guidelines, Part T rather than Part B. Cf. Register, 678 F.3d at 1267 (concluding the defendant's failure-to-pay-over and filing false returns counts were "of the same general type" in part because they were both governed by the Internal Revenue Code and Part T of the Sentencing Guidelines).

---

[5]In 2001, the Sentencing Commission proposed an amendment to the official commentary to § 2T1.1 that would have called for grouping a tax evasion count with the count charging the offense that provided the income under § 3D1.2(c), but that proposed amendment was never promulgated. See Notice of Proposed Amendments to the Sentencing Guidelines, 66 Fed. Reg. 7962, 8004 (Jan. 26, 2001). Notably, the Sentencing Commission has managed to promulgate a similar amendment indicating that money laundering counts are to be grouped with the counts for an underlying offense that generated the laundered funds under § 3D1.2(c). See U.S.S.G. app. C, amend. 634; U.S.S.G. § 2S1.1 cmt. n.6. In light of this history, it appears "the Sentencing Commission does not support a categorical rule requiring courts to group fraud and tax evasion counts." Martin, 363 F.3d at 44 n.32.

Further, the loss for the tax offenses is determined differently under the Guidelines. Specifically, § 2T1.1 determines the base offense level based on tax losses, not on fraud losses. Also, to the extent § 2T1.1 accounts for fraud losses, it does so only as a two-level increase, so the fraud losses are not aggregated with the tax losses to set an offense level. See U.S.S.G. § 2T1.1(b)(1) (providing for a two-level increase "[i]f the defendant failed to report or to correctly identify the source of income exceeding $10,000 in any year from criminal activity").

Perhaps most important for both subsections (c) and (d) of § 3D1.2, Doxie's fraud and tax offenses are not "closely related" on the facts of this case. Doxie's tax crimes involved not just different victims, but distinct offense behavior. The circumstances of Doxie's wire and mail fraud—submitting false invoices and making fraudulent credit card charges at his work—are different in kind from his failure to report all of his income on his federal tax returns. Further, Doxie's fraud and tax crimes were not interrelated in a way that made them "integral cogs in continuing [a] scheme." Cf. United States v. Mullens, 65 F.3d 1560, 1564 (11th Cir. 1995) (explaining that the defendant's money laundering of the proceeds of the Ponzi scheme promoted the Ponzi scheme by "returning false profits to some investors and paying expenses to maintain the façade of success [which in turn] enabled [the defendant] to attract new investors and keep old investors from discovering his deceit"). In fact, the only connection between Doxie's unreported

income and his fraud was that "the money represented the proceeds of the fraud,"

which by itself is insufficient for grouping under § 3D1.2. See McClendon, 195

F.3d at 602 (concluding that money laundering and fraud counts should not be

grouped under § 3D1.2(d) merely because the laundered money was the proceeds

of the fraud). [6]

Finally, any ambiguity as to whether to group Doxie's fraud and tax counts

together under § 3D1.2(c) or (d) is resolved by reference to the Sentencing

Guidelines' stated goals for grouping counts. Regardless of how Doxie's counts

are grouped, his offense level ultimately is determined by his wire and mail fraud

counts because they produce the highest adjusted offense level (25 as opposed to

20). See U.S.S.G. § 3D1.3(a)-(b). Because the Group 1 adjusted offense level of

25 did not include a specific-offense-characteristic increase for Doxie's tax counts,

there was no double counting of Doxie's tax offense behavior when the district

court applied the one-level increase under § 3D1.4 to determine the combined

offense level. By imposing § 3D1.4's one-level increase for the four tax counts,

the resulting advisory guidelines range furthered the goal of providing

---

[6]Had the district court grouped all 66 counts together in one group under either U.S.S.G. § 3D1.2(c) or (d) as Doxie urged, the adjusted offense level would have remained 25 under § 3D1.3(a) or (b). The only difference is there would have been no multi-count enhancement under § 3D1.4. The total offense level after the acceptance-of-responsibility reduction would have been 23. With a total offense level of 23 and a criminal history category of I, Doxie's advisory guidelines range would have been 46 to 57 months, instead of the 51 to 63 months used by the district court.

"incremental punishment for significant additional criminal conduct." See U.S.S.G. ch. 3, pt. D, introductory cmt.

Had the district court done as Doxie urged and placed all 66 counts into one group, there would have been no additional punishment for Doxie's tax crimes reflected in the advisory guidelines range. In short, the only way to achieve the stated goals of providing incremental punishment for additional crimes while preventing double counting for substantially the same conduct is to refuse to group the tax counts with the wire and mail fraud counts.

For these reasons, we conclude the district court did not err when it grouped Doxie's tax counts separately for purposes of calculating his offense level and advisory guidelines range. Accordingly, Doxie has not shown that his sentence is procedurally unreasonable.[7]

**AFFIRMED.**

---

[7]Doxie's counseled brief states in passing that his sentence is both procedurally and substantively unreasonable, but offers no further argument as to substantive reasonableness. Thus, Doxie has abandoned any argument that his sentence is substantively unreasonable. See United States v. Woods, 684 F.3d 1045, 1064 n.23 (11th Cir. 2012) (explaining that a defendant abandons an issue to which he merely makes a passing reference and fails to develop any argument).