[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-10310

_____

D.C. Docket No. 0:17-cr-60190-JIC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSEPH CAPELLO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(October 25, 2019)

Before MARCUS, GRANT, and HULL, Circuit Judges.

PER CURIAM:

Joseph Capello appeals his 140-month sentence following the entry of a plea

of guilty to drug trafficking, firearms, and obstruction charges. On appeal he

argues that: (1) his due process rights were violated because the government provided notice too late of sentencing enhancements and their accompanying factual bases; (2) the district court incorrectly applied a sentencing enhancement for possessing a firearm in connection with a felony offense because the alleged felonies -- two drug transactions -- took place at the direction of law enforcement and lab tests determined that the drugs Capello turned over to law enforcement did not contain a controlled substance; and (3) the district court incorrectly applied a sentencing enhancement for possessing a firearm in connection with a felony offense because the firearms were not in close proximity to the drug transactions he conducted in the driveway of his house. Finding no merit in these claims, we affirm.

## I.

The essential facts are these. For a few months in 2017, Capello worked as a confidential informant ("CI") for the Broward County Sheriff's Office ("BCSO") and the DEA. Capello began working as a CI after law enforcement officers observed him leaving the business premises of the target of a drug investigation. Capello was stopped by the police and admitted that he went to the premises to purchase heroin. Capello agreed to work as a confidential informant and engaged in a number of controlled buys of narcotics at the direction of law enforcement officials. He used investigative funds to purchase drugs and record the exchanges.

However, Capello's handling officers later discovered that he had not been truthful with them. During the period he worked as a CI, Capello went rogue and engaged in several drug buys on his own. On one occasion he received more heroin from a drug dealer than the amount he reported and turned over to law enforcement, and he later surrendered a non-controlled substance that he falsely claimed to be fentanyl. The agents also discovered that Capello had a hidden compartment in his vehicle where he could hide money and drugs both before and after each controlled buy.

At issue today are the events surrounding two drug transactions that Capello was involved in on July 10 and 18, 2017. Capello was instructed by his handlers to arrange the purchase of fentanyl from would-be sellers. The two transactions took place in front of Capello's residence in his driveway. After each buy, Capello was followed to the end of his block, where he surrendered what he claimed was fentanyl to law enforcement officers. Subsequent testing revealed, however, that what Capello surrendered was not, in fact, a controlled substance.

Following up on their substantial suspicions, law enforcement officers planned a sting operation targeting Capello in August 2017. He was sold two ounces of heroin by an undercover agent but only turned over one ounce of the heroin to the BCSO officers. When Capello was later confronted, he admitted that he intended to sell the one ounce of heroin he kept for himself, and that he had

3

stolen, purchased, and distributed other drugs on his own and outside the direction of law enforcement officers during the time he acted as a CI. Thereafter, Capello was arrested, and then consented to a search of his residence. Officers found three firearms in his bedroom. One of them was a sawed-off shotgun. Capello admitted to having recently sawed off the barrel. Capello also told the police that he kept the door to the bedroom locked where the guns were housed.

## II.

Capello was indicted by a grand jury sitting in the Southern District of Florida on August 17, 2017 and charged in four counts with: the knowing and intentional possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1) (Count 1); being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Count 2); possession of a sawed-off shotgun which was not registered to him in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. § 5861(d) and § 5871 (Count 3); and corruptly concealing heroin with intent to impair its availability for use in a federal grand jury proceeding and at trial, in violation of 18 U.S.C. § 1512(c)(1) (Count 4).

Soon thereafter, Capello pled guilty to Counts 1, 2, and 4; the government agreed to dismiss Count 3. All of the issues raised on appeal arose from the sentence the district court entered on January 11, 2018. As for the first group of offenses -- Counts 1 and 2 -- the sentencing court found that the circumstances

surrounding the July 10 and 18 transactions "support an inference that the defendant could have easily and quickly retrieved any of the three firearms from his bedroom which was next to the front yard." Based on this finding of fact, the court rejected Capello's objection to a four-level sentencing enhancement pursuant to U.S.S.G. § 2K2.1(b)(6)(B) for the use or possession of a firearm "in connection with another felony offense." The trial court also found that the sawed-off shotgun in Capello's bedroom met the definition of a "destructive device" under 26 U.S.C. § 5845(f). Thus, the court sustained the government's objection to the failure in the presentence investigation report ("PSI") to include a two-level enhancement under U.S.S.G. § 2K2.1(b)(3)(B) for offenses that involve a destructive device.

The district court determined that the total offense level was 29 and that Capello's criminal history category was V, yielding a guideline range of 140 to 175 months of imprisonment. The government sought a sentence within the guidelines range. Capello argued, however, that a sentence "somewhat less than 120 months" would be more appropriate. The district court sentenced Capello to a period of imprisonment of 140 months on Counts 1 and 4, and 120 months on Count 2, each count to be served concurrently with the others, along with 3 years of supervised release, a restitution obligation of $3,000, and a special assessment of $300. When the sentence was imposed, Capello's counsel objected based on the arguments he had previously made -- namely that the sawed-off shotgun was not a

destructive device and that the weapons in the bedroom were not readily accessible. At no time during or after the sentencing proceeding did Capello complain to the district court that he had received inadequate notice concerning any of the sentencing enhancements.

Capello has timely appealed from the sentence.

### III.

First, we are unpersuaded by Capello's claim that he was deprived of due process when he was notified too late that the government would be seeking a two-level enhancement under U.S.S.G. § 2K2.1(b)(1)(A) (offense involving 3 or more firearms), and a two-level enhancement under U.S.S.G. § 2K2.1(b)(3)(B) (possession of a destructive device). We note at the outset that Capello never claimed in district court that his right to due process was violated on lack of notice grounds, nor does he explain how he may have sustained any prejudice on account of any due process violation. As a result, we review his arguments for plain error. United States v. Candelario, 240 F.3d 1300, 1306 (11th Cir. 2001). In order to establish plain error, the defendant must show (1) an error, (2) that is plain, and (3) that affected his substantial rights. United States v. Turner, 474 F.3d 1265, 1276 (11th Cir. 2007). If the defendant can satisfy these conditions, we may exercise our discretion and recognize the error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. Id. Our precedent makes clear that

6

plain error review is "daunting," "difficult to meet," and "should be exercised sparingly." United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir. 2005) (quotations omitted).

Capello has failed to navigate around the hurdles of plain error. He cannot establish any error, let alone one that is plain or affected his substantial rights, or impugned the fairness or integrity of the proceedings. "To show plain error, [Capello] must show an error that is obvious and is clear under current law. Where neither the Supreme Court nor this Court has ever resolved an issue, and other circuits are split on it, there can be no plain error in regard to that issue. In other words, [Capello] must show that some controlling authority clearly established that the court erred in imposing the challenged conditions." United States v. Carpenter, 803 F.3d 1224, 1238–39 (11th Cir. 2015) (citations, quotations, brackets and emphasis omitted). It is well-settled under the law of this Circuit that no error can be plain "[w]ithout precedent directly resolving [Capello's] kind of claim," because such a claim would not be obvious or clearly contrary to established law. United States v. Humphrey, 164 F.3d 585, 588 (11th Cir. 1999); see also United States v. Olano, 507 U.S. 725, 734 (1993) (explaining that the "plain" part of plain error "is synonymous with 'clear' or, equivalently, 'obvious,'" meaning that the error must be "clear under current law"); United States v. Lange, 862 F.3d 1290, 1296 (11th Cir. 2017) ("[T]here can be no plain error where there is no precedent

7

from the Supreme Court or this Court directly resolving it." (quotation omitted));

United States v. Dortch, 696 F.3d 1104, 1114 (11th Cir. 2012) ("In the absence of

any controlling precedent about this issue, 'we conclude [that] the district court's

alleged error is not "obvious" or "clear under current law."' Without a 'plain'

error, we lack authority to reverse the district court." (quoting Humphrey, 164 F.3d

at 588)); United States v. Aguillard, 217 F.3d 1319, 1321 (11th Cir. 2000)

("[W]here neither the Supreme Court nor this Court has ever resolved an issue . . .

there can be no plain error in regard to that issue.").

Generally, due process requires that a criminal defendant have adequate

notice of, and the opportunity to rebut the facts the government intends to present

to support a criminal penalty. See United States v. Plasencia, 886 F.3d 1336, 1343

(11th Cir. 2018). However, the degree of due process protection required at

sentencing "is only that which is necessary to ensure that the district court is

sufficiently informed to enable it to exercise its sentencing discretion in an

enlightened manner." Id. (quotation omitted). Capello points to no case law stating

that he is entitled to notice, prior to sentencing, that he may be subject to a

particular Guideline. Without controlling law from the Supreme Court or our

Circuit on this issue, there cannot be plain error. See Carpenter, 803 F.3d at 1238–

39.

8

Even if we reviewed this question de novo, rather than for plain error, the facts make clear that Capello received adequate notice. Both versions of Capello's pre-sentence report included a statement that Capello obstructed the investigations concerning the target of the July 10 and 18 transactions and could be subject to a two-level enhancement under § 2K2.1(b)(1)(A). This statement afforded Capello fair notice that these transactions could serve as the basis for a sentence enhancement. See Plasencia, 886 F.3d at 1344 (finding adequate notice for a district court's sua sponte upward variance based on perjured testimony where the government provided notice prior to the sentencing hearing that it might seek an upward variance for the same conduct).

Moreover, the factual proffer Capello agreed to and signed as a part of his plea agreement stated that Capello's handling officers learned from the government laboratory that no controlled substances were found in a sample Capello turned over "from a different target in a separate investigation." This provided Capello with further notice that the July 10 and 18 transactions could serve as the basis for sentencing enhancement. See id. ("[W]hen, as here, the circumstances afford a defendant notice that he engaged in conduct that may result in the application of a Guidelines enhancement, the court need not provide additional notice of its intention to apply the enhancement sua sponte -- the Guidelines themselves provide adequate notice.").

9

As for the destructive device enhancement under § 2K2.1(b)(3)(B), Capello was on notice that the government could pursue this enhancement as well because he admitted that he possessed the weapon, the firearm was found in his bedroom, and, indeed, he admitted sawing the barrel off himself. Again, when the circumstances provide notice to a defendant that he engaged in conduct that may result in the application of an enhancement, the defendant is not entitled to additional notice. See id. (no lack of notice as to district court's sua sponte application of a sentencing enhancement where the defendant was fully aware of the conduct supporting the enhancement). Capello's first claim thus fails on multiple fronts.

We also find no merit to Capello's claims that the district court incorrectly applied a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) because the firearms were not possessed "in connection with another felony offense." "[W]e review the district court's interpretation of the Guidelines and its application of the Guidelines to the facts de novo, but we review its findings of fact only for clear error." United States v. Register, 678 F.3d 1262, 1266 (11th Cir. 2012) (citing United States v. Ellisor, 522 F.3d 1255, 1273 n.25 (11th Cir. 2008)).  At sentencing, the government "has the burden of introducing sufficient and reliable evidence to prove the necessary facts by a preponderance of the evidence." United States v. Washington, 714 F.3d 1358, 1361 (11th Cir. 2013) (quotation omitted).

10

"Under the preponderance of the evidence standard, the trier of fact must find the existence of a fact is more probable than not." United States v. Dimitrovski, 782 F.3d 622, 628 (11th Cir. 2015). "Whether sufficient facts exist [to support a Guidelines enhancement] is a factual issue subject to review under the clearly erroneous standard." United States v. Crawford, 906 F.2d 1531, 1536 (11th Cir. 1990); see also United States v. Philidor, 717 F.3d 883, 885 (11th Cir. 2013) (explaining that the district court is "free to make" reasonable inferences at sentencing but cannot rely on an inference that is "speculative to the point of being clearly erroneous" (citation omitted)).

Capello first argues that the evidence was insufficient to support a § 2K2.1(b)(6)(B) enhancement because, essentially, no felony took place at his house; instead, he says, he engaged in the two drug transactions at the direction of law enforcement and, moreover, lab tests determined that the drugs Capello turned over to law enforcement did not contain a controlled substance. Capello suggests that either he received fake drugs from the drug dealer, or that he purchased actual drugs in the two transactions, but sometime later, he decided to steal them and swap them out for the fake fentanyl he gave to law enforcement.

We are unpersuaded. The record reflects that Capello, as he had done on several prior occasions, purchased what he believed to be fentanyl at the direction of law enforcement in two transactions, one on July 10 and one on July 18, that

11

occurred in his driveway. After he left his house and went down the block to meet with law enforcement to surrender the purported fentanyl, however, the detectives discovered it was not fentanyl. The detectives later caught Capella stealing drugs in an August 2017 sting operation, at which point Capello admitted that he intended to sell one ounce of heroin he had kept for himself, and admitted that he had stolen, purchased, and distributed other drugs on his own and outside the direction of law enforcement officers during the time he acted as a CI. The detectives also discovered that Capello kept a hidden compartment in his vehicle where he could hide money and drugs both before and after each controlled buy. On this record, the government offered more than sufficient evidence to prove, by a preponderance of the evidence, that Capello hid the actual fentanyl he purchased in the July 10 and 18, 2017 drug transactions at his house before he met with law enforcement to surrender the drugs.

As for his claim that it is possible that no felony occurred because he received fake drugs from the dealer, the record simply does not support it. Indeed, nothing in the record suggests that drug dealers often sell fake drugs. It's even more unlikely in this scenario, since the drug dealer had repeated transactions with Capello, who would have had time to discover the hoax in between the transactions. Nor is there anything in the record to indicate that Capello decided to steal the drugs at some place other than his house. Capello admitted that he had

12

stolen drugs in the past when he was purportedly engaged in controlled buys at the direction of the police, he kept a hidden compartment in his car that he used to hide the drugs, and what he turned over to the officers immediately after the July 10 and 18 transactions was not fentanyl -- all of which suggests that he stole the drugs for his own purposes at the time of those controlled buys. Thus, there was sufficient evidence to prove, by a preponderance of the evidence, that felonies occurred when Capello made the two controlled buys with the drug dealer, for purposes of the § 2K2.1(b)(6)(B) enhancement.

Nor, moreover, did the district court clearly err when it found that the firearms the agents recovered from Capello's bedroom on August 8, 2017 were accessible during the July 10 and 18 transactions, which occurred in Capello's driveway. Sentencing Guideline § 2K2.1(b)(6)(B) provides for a four-level sentencing enhancement when the defendant "used or possessed any firearm or ammunition in connection with another felony offense." In November 2006, the Commission added a note explaining that the "in connection with" enhancement applies "in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia." Id. App. Note 14(B) (emphasis added).

"Our cases interpreting guidelines that require a 'connection' have consistently recognized that a firearm which facilitates or has the potential to

13

facilitate an offense is possessed 'in connection with' that offense." United States v. Carillo-Ayala, 713 F.3d 82, 93 (11th Cir. 2013). A firearm has the "potential to facilitate an offense" in "circumstances showing the firearm's ability for use as a weapon or the attempt to use the firearm in a manner that would facilitate the offense." Id. at 96; see also United States v. Flennory, 145 F.3d 1264, 1270 (11th Cir. 1998) (finding possession of a firearm in connection with a crime when the defendant kept the firearm in a car across the street from where he sold drugs), superseded by regulation on other grounds, as stated in United States v. Brown, 332 F.3d 1341, 1345 n.6 (11th Cir. 2003). "[T]here is a strong presumption that a defendant aware of the weapon's presence will think of using it if his illegal activities are threatened," so "[t]he firearm's potential use is critical." Carillo-Ayala, 713 F.3d at 92. "[T]he presence of a gun within a defendant's dominion and control during a drug trafficking offense ordinarily will suffice to show . . . that the defendant possessed the firearm in connection with the offense." Id. at 96.

Capello's argument that the firearms were too far away to have been used "in connection with" the drug crimes is unpersuasive. As the record reflects, when Capello purchased drugs in his driveway, numerous weapons sat in his bedroom. Just as in Flennory, where the defendant kept his firearm in a readily accessible location in his car across the street during a drug transaction, Capello could easily have gone inside and quickly retrieved one of the firearms from his bedroom,

14

which was next to the front yard.  Simply keeping his bedroom door locked may have kept the kids from easily and quickly retrieving a firearm, but, presumably, Capello had a key to his own bedroom, and nothing in the record supports his argument that it would have been impossible for him to unlock the bedroom door and quickly and easily retrieve a firearm.  On this record, the district court found that the facts "support an inference that the defendant could have easily and quickly retrieved any of the three firearms from his bedroom which was next to the front yard." Sentencing Hearing Transcript at 24. We can discern no clear error in the district court's findings about the location of the guns at the time of the July 10 and 18 transactions, nor any error in its legal conclusion that the firearms had the potential to facilitate the commission of another offense. See United States v. Gordillo, 920 F.3d 1292, 1300 (11th Cir. 2019) (characterizing the sentencing court's findings on the physical location of firearms as "factual findings" and the determination of whether a firearm was in "close proximity" as a "legal conclusion").

As for Capello's claim that there was no proof that the firearms were in his bedroom during the July 10 and 18 transactions, we again disagree.  When he was arrested, Capello told the agents that his bedroom door was "always" locked to prevent his children from accessing the firearms.  Nothing in the record suggests that he did not possess them on July 10 and 18.  The fact that the firearms were

15

seized within approximately three weeks of the drug transactions, coupled with the evidence that Capello "always" kept the firearms behind the locked door of his bedroom, raised the fair inference that he had possessed the firearms during the time of the drug transactions.  Thus, there was sufficient evidence to prove, by a preponderance of the evidence, that the firearms the agents recovered from Capello's bedroom on August 8, 2017 were accessible during the July 10 and 18 transactions.

**AFFIRMED.**